[No. A059468. First Dist., Div. Three. Aug. 30, 1993.]

JAN HALL et al., Petitioners, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
STEVEN A. TROMPAS, Real Party in Interest.

428

**COUNSEL**

Daniel R. Martinez for Petitioners.

No appearance for Respondent.

Gorelick & Gorelick and Jeff Gorelick for Real Party in Interest.

**OPINION**

**CHIN, J.**—In *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899], the California Supreme Court stated in no uncertain terms that, with limited exceptions, an arbitrator's decision is not reviewable for errors of fact or law. Purporting to apply two statutory exceptions, the superior court here has vacated an arbitration award because (1) the arbitrator relied upon partnership principles, when the original complaint alleged agency, but not a partnership, and (2) the arbitrator denied a request to reopen to present additional evidence. We conclude that the superior court has misapplied the arbitration statutes. We direct issuance of a writ of mandate.

Practical difficulties arise when superior courts or appellate courts review arbitral proceedings, which are not designed for full judicial review. Instead of a transcript of the arbitration, the parties presented to the superior court and have lodged with us declarations describing the arbitral events. These declarations do not fully explain the arbitration proceedings. Although the parties do not disagree about what happened during arbitration, real party in interest has provided only a sketchy description. Petitioners fill in many details about the arbitration and the events leading up to it, details important in evaluating the arbitration and the superior court order.

The declarations and other exhibits disclose the following. On August 26, 1991, petitioners Jan and Martha Hall filed a complaint against Tom Proell, the real estate brokerage firm of Burgess Colon Robinson & Co., Inc. (BCRC), and real party in interest Steven A. Trompas, also known as Aly Trompas. The complaint sought damages because the defendants, listing brokers and agents for the Halls' property, withheld information about financial problems of the buyers, who defaulted after purchasing the Halls' residence. Although the complaint did not directly allege a partnership between Trompas and Proell, it alleged that each acted as an agent for the other.

All three defendants, through the same counsel, filed an answer denying the allegations and invoking the arbitration clause in the listing agreement. During discovery, the Halls' attorney spoke with Trompas's attorney. The Halls' attorney explained the Halls' theory that Trompas was vicariously liable for Proell's omissions because Trompas, a neighbor of the Halls and a commercial property agent with BCRC, procured the listing and shared the sales commission with Proell, the listing agent in the BCRC office. Before the arbitration began, the Halls' attorney personally explained to Trompas, who had substituted himself in propria persona, that the Halls considered

him a co-agent and partner of Proell and therefore responsible for Proell's conduct. Trompas, in his declaration, did not deny that this conversation took place, but did state that he understood from the pleadings that the issue, as far as he was concerned, was whether he engaged in any wrongful conduct that injured the Halls.

During a status conference, the parties agreed to submit all issues to binding arbitration. Pursuant to the parties' stipulation, the court sent the matter to binding arbitration before Stuart Safine.[1]

On the first day of the arbitration hearing, at which Trompas appeared in propria persona, Safine advised Trompas that one issue was whether Trompas was a fiduciary of the Halls and was a co-agent and partner of Proell for this transaction because of his involvement and because of evidence he and Proell split the commission. Safine explained that Trompas might be vicariously liable for Proell's conduct by virtue of an agency or partnership relationship. At the conclusion of that day's hearing, Safine urged Trompas to hire counsel for the second day of the hearing.

When the participants reconvened, Trompas appeared without an attorney. During the hearing, the Halls testified about Trompas's involvement in the marketing of their home. They had known Trompas a long time before hiring him as their agent, and he was the one who solicited them for the listing. He mailed them a listing agreement, which they signed and returned. Both Trompas and Proell held open houses and showed the property to prospective purchasers. After the offer came in, Trompas monitored the transaction and was involved in related telephone conversations with the various parties. At the end of the day the arbitrator took the matter under submission.

After the close of the case, Safine granted Trompas's request to have an attorney file a closing brief on his behalf. Trompas retained an attorney, who requested an extension of time to. file the brief and asked Safine to reopen the hearing for presentation of evidence on the partnership issue. Safine denied the request to reopen, but granted the extension of time.

---

[1]Trompas admits that, although he did not sign the listing agreement, he consented to arbitration. He notes that he objected to selection of Stuart Safine as arbitrator and that counsel overrode his objections, but he does not explain the significance of that fact. Trompas also asserts that the court "ordered the matter to binding arbitration," that this was "binding judicial arbitration," and that the arbitration was "extra-contractual." Elsewhere, Trompas calls it " 'hybrid' " arbitration as described in *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 401-402 & footnote 5 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].

Trompas misreads *Blanton*. Because the arbitration here stemmed from contract, it was neither "judicial arbitration" nor a " 'hybrid.' " It was private arbitration, by its terms binding and governed by the general arbitration statute (Code Civ. Proc., § 1280 et seq.). We reject Trompas's suggestion that the superior court had a greater measure of control over this arbitration than it would over any other private arbitration.

After briefing and argument, Safine rendered an award in the Halls' favor against Trompas and Proell. (Proell then filed for bankruptcy. BCRC filed for bankruptcy before the award, and the matter was stayed against it.) The arbitrator's written award identified several acts of misconduct by Proell and assessed $139,488.87 in damages. It rejected Trompas's contention that he was neither an agent nor partner of Proell, finding as a matter of law that his participation in marketing the home and his sharing the commission with Proell made him a partner who must share the liabilities.

The Halls sought to confirm the award, and Trompas sought to vacate it. After hearing, the court confirmed the award as to Proell and vacated it as to Trompas, finding that the arbitrator exceeded his jurisdiction by attempting to determine the partnership issue, which the pleadings did not raise. The court further found that the arbitrator's refusal to reopen the arbitration to permit presentation of evidence against the partnership theory compounded this excess of jurisdiction. This petition followed.

### Arbitration Generally

■ "In cases involving private arbitration, '[t]he scope of arbitration is . . . a matter of agreement between the parties' [citation], and ' "[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission." ' [Citations.] [¶] Title 9 of the Code of Civil Procedure, as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. ([Code Civ. Proc.] § 1280, et seq.) Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.] Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' [Citations.] Indeed, more than 70 years ago [the California Supreme Court] explained: 'The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' [Citation.] 'Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts.' [Citation.]" (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at pp. 8-9.)

Where, as here, there is judicial contact, Code of Civil Procedure section 1286 et seq.[2] strictly limits the court's role. On a petition to confirm, correct, or vacate an arbitrator's award, the court may (1) confirm the award as made, (2) correct the award and confirm it as corrected, (3) vacate the award, or (4) dismiss the proceeding. (§ 1286.) The court may vacate the award on any of the following five grounds: "(a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." (§ 1286.2.)

In reviewing the pertinent authorities, *Moncharsh* found "no shortage of proclamations" of an additional ground for vacating an arbitrator's decision: "when (i) an error of law appears on the face of the decision, and (ii) the error causes substantial injustice. [Citation.]" (*Moncharsh* v. *Heily & Blase*, *supra*, 3 Cal.4th at p. 13.) *Moncharsh* also found authorities holding error need only appear on the face of the award, regardless of resulting injustice. (*Id.*, at pp. 13-14.) *Moncharsh* examined the genesis and development of the additional ground and disapproved the decisions embracing it (*id.*, at pp. 14-28), finding that they had "perpetuated a point of view that is inconsistent with the modern view of private arbitration . . . ." (*Id.*, at p. 28.)

### Grounds for Vacating This Award

In this case, the superior court cited subdivision (d) of section 1286.2 as its primary ground for vacating the award in favor of the Halls, explaining: "The law is now clear under *Moncharsh* v. *Heily & Blase* that a mere error in law appearing on the face of the arbitrator's award does not defeat the award. However, it is also clear that an award must be based on issues raised by the pleadings. *Cobler* v. *Stanley Barber et al.* 217 Cal.App.3d 518 [265 Cal.Rptr. 868]. In that case, it was held that where the arbitrator acted in excess of his jurisdiction, by attempting to determine matters not submitted, the award should be set aside. Further, the case held that a[n] arbitrator may not create and decide a new cause of action. [¶] I have reviewed the complaint and take judicial notice thereof. The complaint does not state a cause of action based on partnership between Trompas and Proell. Further,

---

[2]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

in the award the arbitrator delineated the issues. The arbitrator stated, as far as Trompas, is concerned, 'The issue is strictly one of a partnership as a matter of law between Trompas and Proell.' Further, the award states on page 6, 'It is of no moment or consequence that plaintiffs failed to use the word partnership [in the complaint!] in an attempt to hold Trompas liable.' "

The court added that "[t]he excess of jurisdiction is further compounded by the attempt of Trompas to reopen the arbitration to be allowed to present evidence against the partnership which was disallowed in apparent violation of [Code of Civil Procedure section] 1286.2(e). [Citation.]"

### Reliance on Cobler Was Erroneous

In *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518 [265 Cal.Rptr. 868] (hereafter *Cobler*), the defendant, a career consulting agency, invoked an arbitration clause to recover the balance due under a contract. Client Ed Cobler, who was dissatisfied with the agency's performance under the contract, filed a counterdemand. The counterdemand stated the nature of the dispute as breach of contract and was amended by letter to add a claim for punitive damages on unspecified grounds. The arbitrator made an award that included $7,500 for emotional distress, and the superior court confirmed the award.

On appeal, the *Cobler* court struck the emotional distress damages because the arbitrator lacked jurisdiction to award them. The court first considered the scope of the arbitration clause, which was limited to disputes " 'arising from' " the agreement. (*Cobler, supra*, 217 Cal.App.3d at p. 530.) It then noted that the demand and cross-demand for arbitration originally raised only contract issues and that even the added demand for punitive damages did not identify an alleged tort. The arbitration briefs and oral argument first raised and purported to submit Cobler's theories of fraud and emotional distress, but the arbitrator expressly made no decision on the fraud issues. (*Id.*, at p. 531.)

The *Cobler* court concluded that the arbitrator treated the matter as one of professional negligence although there was no authority extending malpractice doctrines to a professional career consulting agency. Because emotional distress damages generally do not arise from breach of contract, and the arbitrator did not decide the only tort issue submitted (fraud), the *Cobler* court found no jurisdiction to award emotional distress damages. (*Cobler, supra*, 217 Cal.App.3d at pp. 531-532.) Relying on a questionable pre-*Moncharsh* statement of law, the court concluded: "Where an arbitrator has made an error of law, the courts will not intervene unless the error is based

on a completely irrational construction of the contractual provisions in dispute. (*Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* [1985] 166 Cal.App.3d 1081, 1091 [213 Cal.Rptr. 62].) In light of the limited scope of the arbitration agreement at issue here, the arbitrator had the duty to keep these proceedings confined to the contract issues pled despite the excursions of the parties outside them, since no effective amendments to bring legally cognizable negligence issues before the arbitrator were made." (*Cobler, supra*, at p. 532.)

■ We agree with the Halls that the superior court's reliance on *Cobler* was erroneous for several reasons. *Cobler* was decided before *Moncharsh* and relied heavily on *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081 [213 Cal.Rptr. 62], a decision *Moncharsh* disapproved. (*Moncharsh* v. *Heily & Blase, supra*, 3 Cal.4th at pp. 27-28.) Consequently, *Cobler* devoted attention to the legal question of whether professional negligence principles could be used to support an award against a career consulting business. Arguably, *Cobler* was treading in a region *Moncharsh* has foreclosed.

Even if *Cobler* is not inconsistent with *Moncharsh*, it is distinguishable here because the arbitration clause in *Cobler* covered only disputes " 'arising from' " the agreement (*Cobler, supra*, 217 Cal.App.3d at p. 530), whereas the arbitration clause here governs "[a]ny dispute or claim in law or equity arising out of this contract or any resulting transaction . . . ."

More significantly, *Cobler* did not address the central question here: whether the Halls' civil complaint, not the arbitration clause or submission by the parties, defines the scope of arbitration. Indeed, in *Cobler* there was no civil complaint, and the *Cobler* court turned first to the arbitration clause and then to the demand and cross-demand for arbitration to determine the scope of the arbitration. (*Cobler, supra*, 217 Cal.App.3d at pp. 523, 530-531.)

### The Role of the Halls' Civil Complaint

In the superior court proceedings, Trompas cited *Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966 [136 Cal.Rptr. 345], for the proposition that because the complaint did not plead " 'partnership,' " and Trompas was not a signatory to the arbitration clause in the listing agreement, the partnership issue was beyond the scope of the arbitration. Neither *Delta* nor any other decision we have examined supports the view that a civil complaint filed before invocation of an arbitration clause limits the scope of private arbitration. In fact, *Delta* stated the

universally accepted rule that "[a]n arbitrator . . . derives his power solely from the arbitration agreement and he cannot exceed his derived powers." (*Ibid.*)

Trompas reminds us that he did not sign the arbitration agreement, suggesting that the complaint, not the arbitration clause, should govern his arbitration. However, as an agent of BCRC, he was entitled to the benefits of the arbitration clause. (*Dryer* v. *Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826]; *Keller Construction Co.* v. *Kashani* (1990) 220 Cal.App.3d 222, 227 [269 Cal.Rptr. 259]; *Thomas* v. *Perry* (1988) 200 Cal.App.3d 510, 516 [246 Cal.Rptr. 156].) He sought its benefits when he invoked the arbitration clause in his answer. In court he then stipulated to arbitrate the controversy. He cannot renounce the arbitration clause here because he now finds it burdensome.

From the record presented, we cannot precisely determine whether the parties stipulated to arbitrate (1) all issues arising out of the listing agreement "or any resulting transaction," as the agreement stated, or (2) only the issues the complaint stated. The only evidence presented below about the stipulation was the declaration by the Halls' attorney, which stated, somewhat ambiguously, that the parties stipulated to arbitrate *"all issues."* Reading the declaration most favorably to the superior court's order, and taking into account (1) that the demand for arbitration came in response to the Halls' complaint, and (2) that the same superior court judge both sent the case to arbitration and vacated the arbitration award, we accept the possibility that *"all issues,"* for purposes of the stipulation, may actually mean all issues *the complaint raised.*

We conclude nevertheless that the superior court overstepped its authority when it vacated the award. The arbitrator properly concluded that partnership was among the issues the complaint raised. The court usurped the arbitrator's primary role in interpreting the complaint.

As *Felner* v. *Meritplan Ins. Co.* (1970) 6 Cal.App.3d 540, 543-544 [86 Cal.Rptr. 178], explains, " '[i]t is for the arbitrators to determine which issues were actually "necessary" to the ultimate decision. [Citation.] Likewise, any doubts as to the meaning or extent of an arbitration agreement are for the arbitrators and not for the court to resolve. [Citation.]' [Citations.] Since the issue . . . was properly before the arbitrator for decision, the only questions for the superior court to consider in confirming or vacating the arbitration award were whether there had been corruption or misconduct by the arbitrator and whether the arbitrator had improperly conducted the hearing or exceeded his powers in making his award. [Citation.]"

■■■ There was no corruption, misconduct, or other impropriety here. The arbitrator simply reached the reasonable conclusion, as he was entitled to do, that partnership was among the issues the parties submitted. The arbitrator could have reached that conclusion by reading the agency allegations of the complaint broadly to include partnership, or he could have determined that by submitting all issues in the complaint, which incorporated the listing agreement, the parties agreed to submit all issues between them. We conclude that the superior court erred in deciding that the arbitrator exceeded his powers within the meaning of section 1286.2, subdivision (d).

### Denial of the Request to Reopen

The superior court mentioned, as a secondary reason for vacating the award, the arbitrator's refusal to reopen the arbitration, and found that the refusal "compounded" the excess of jurisdiction. Although we have found no excess of jurisdiction, we now consider whether the arbitrator's refusal to reopen was itself a sufficient basis for vacating the award.

Section 1286.2, subdivision (e), states that the court shall vacate the award if it determines that "[t]he rights of such party were *substantially prejudiced* by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or *by the refusal of the arbitrators to hear evidence material to the controversy* or by other conduct of the arbitrators contrary to the provisions of this title." (Italics added.)

■■■ Trompas contends he was substantially prejudiced by the arbitrator's refusal to reopen to permit him to present evidence showing that, under custom and practice in the real estate industry, an oral agreement between brokers to share fees does not create a partnership. He asserts he was "taken entirely off-guard" by the arbitrator's suggestion during the hearing that his agreement to share fees might make him liable for Proell's wrongdoing. He argues that the arbitrator abused his discretion in not permitting a reopening of evidence to refute a new theory added to the case.

Initially, we note that the only evidence presented by declaration to the superior court contradicts Trompas's assertions to this court. It shows that the Halls' counsel advised both Trompas and his former attorney before the arbitration began that the Halls considered Trompas and Proell partners and were seeking to hold Trompas liable for Proell's conduct. Trompas's declaration below stated that he "understood from the pleadings that the issues of the case, as far as [he] was concerned, related to whether [he] engaged in any wrongful conduct which injured the plaintiffs" and that he did not understand " 'partnership' " to be an issue in the case. He did not deny, however, that the Halls' attorney advised both him and his former attorney otherwise.

Even if the superior court could properly excuse Trompas for not proffering the partnership evidence earlier, it would be required to sustain the arbitrator's decision if the evidence was not material or if the arbitrator's failure to hear it did not substantially prejudice Trompas.

■ Typically, a trial court reviewing a ruling excluding evidence first resolves any dispute over materiality and then considers whether excluding material evidence caused substantial prejudice. Under *Moncharsh*, "it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at p. 11.) Subdivision (e) of section 1286.2, applied in the usual two-step manner, would often permit a court to second-guess an arbitrator's legal theory if materiality hinged on the validity of the arbitrator's differing view of the law. If an arbitrator excluded evidence as immaterial, a reviewing superior court could examine the arbitrator's theory of the case while analyzing the materiality of evidence the arbitrator excluded.

This case illustrates the problem with reading subdivision (e) of section 1286.2 to authorize the usual two-step review process. In the typical arbitration, an arbitrator must make numerous decisions about admission of evidence and in doing so may exclude material evidence. No doubt there will often be aggrieved parties who believe they have been "substantially prejudiced." Decisions about materiality cannot be made without familiarity with the issues and evidence in the arbitration. If the superior court must, with or without a transcript of the arbitration, routinely review the arbitrator's decision on materiality before reaching the question of substantial prejudice, the legislative goal of arbitral finality will be unattainable. Instead of saving time and money, the arbitration will be supplemented by lengthy and costly judicial second-guessing of the arbitrator.

■ After denying the request to reopen, the arbitrator here rendered an award stating that "[t]he issue is strictly one of a partnership as a matter of law between Trompas and Proell. . . . A partnership is defined in California Corporation[s] Code section 15006. See also [Corp. Code, §] 15007[, subd.] (4); 48 Cal.Jur. 3d [§ 152, p.] 673. . . . It is of no moment or consequence that plaintiffs failed to use the word partnership in an attempt to hold defendant Trompas liable. The partnership arises as a matter of law regardless of what is pled in the pleadings, and evidence thereof was produced at trial. Defendant Trompas shared in the profits, and must therefore share in the liabilities." In superior court and in this court, Trompas has challenged the arbitrator's understanding of partnership law.

■ We do not accept the suggestion, implied by these challenges, that section 1286.2, subdivision (e), provides a back door to *Moncharsh* through

which parties may routinely test the validity of legal theories of arbitrators. Instead, we interpret section 1286.2, subdivision (e), as a safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.

To vacate an award, section 1286.2, subdivision (e), requires that the trial court find that a party has been "*substantially prejudiced* by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." (Italics added.) Where, as here, a party complains of excluded material evidence, the reviewing court should generally focus first on prejudice, not materiality. To find substantial prejudice the court must accept, for purposes of analysis, the arbitrator's legal theory and conclude that the arbitrator might well have made a different award had the evidence been allowed.

Applied in this manner, subdivision (e) of section 1286.2 does not cover the arbitrator's actions here. Trompas failed to show substantial prejudice. The arbitrator received an informal offer of proof, determined that even if presented the evidence would not persuade him against the Halls, and denied Trompas the opportunity to replace his offer of proof with actual testimony. The arbitrator did not prevent Trompas from fairly presenting his defense. Instead, the arbitrator concluded that Trompas's defense, even with the proffered evidence, lacked merit. The superior court erred in applying section 1286.2, subdivision (e), to vacate the arbitrator's award.

Let a peremptory writ of mandate issue, directing the Contra Costa County Superior Court to set aside its order vacating the arbitration award and to enter a new order confirming the award.

Merrill, Acting P. J., and Werdegar, J., concurred.