Filed 6/25/14  Organic Compounds v. Watkins CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ORGANIC COMPOUNDS, INC., | B246124 |
| Plaintiff and Appellant; | (Los Angeles County Super. Ct. No. NC052101) |
| REX WATKINS et al., | |
| Cross-defendants and Appellants, | |
| v. | |
| JOSEPH FREIRE et al., | |
| Defendants, Cross-Complainants and Respondents. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Patrick T. Madden, Judge.  Affirmed in part, reversed in part and remanded.

Hassen & Associates, Richard J. Hassen; Ward & Ward and Alexandra S. Ward for Plaintiff, Cross-defendants and Appellants.

Furman Usher, Richard S. Usher; Alan S. Yockelson for Defendants, Cross-complainants and Respondents.

Plaintiff and cross-defendant Organic Compounds, Inc. (Organic) and cross-defendants Rex and Helen Watkins (the Watkins) appeal from a judgment

confirming an arbitration award in favor of defendants and cross-complainants Strategic Growth Incorporated (Strategic) and Joseph Freire. Organic and the Watkins contend the trial court erred by (1) failing to determine whether the contract from which the parties' disputes arose was enforceable before ordering the parties to arbitration; (2) ordering arbitration of the cross-claims against the Watkins without first determining whether they were bound by the contract's arbitration clause; and (3) failing to vacate the arbitration awards on the grounds that the arbitrator exceeded his powers and the rights of Organic and the Watkins were substantially prejudiced. We conclude the trial court erred by ordering the Watkins to arbitration, because they were not signatories to the contract at issue in the claims asserted against them and the court did not find they were bound by the contract as alter egos of Organic. Accordingly, we reverse the judgment as to the Watkins. We affirm the judgment as to Organic.

## BACKGROUND

A.    *Relationships Between the Parties*

The Watkins are the shareholders, or trustees for the shareholders of Organic, and owners of the business property used by Organic. Freire is the president and/or principal of Strategic.

In December 2005, Strategic entered into an "Acquisition Advisory Services Agreement" (the Services Agreement) with Organic and the Watkins. The Services Agreement was an exclusive agreement under which Strategic, a private investment banking advisory services provider, agreed to provide services to assist in the sale of Organic. Specifically, Strategic agreed to prepare documents and material necessary to inform prospective buyers of the opportunity, identify, contact, brief and introduce prospective buyers to Organic and assist Organic in the successful closure of a sales transaction. Organic agreed to pay Strategic an

2

installment fee for three months and a transaction fee on the closing date of any transaction. The Services Agreement included a "Limitation of Service" clause stating that the agreement "relates solely to Services described herein," as well as an integration clause. It also had an arbitration clause requiring the parties to submit any claim "relating to this Agreement" to binding arbitration by JAMS in Los Angeles. The Services Agreement was signed by Rex Watkins, both on behalf of Organic and as "An individual shareholder or trustee for shareholder of Organic Compounds, Inc., and owner of the business property used by same." Helen Watkins signed the Services Agreement as "An individual shareholder or trustee for shareholder of Organic Compounds, Inc., and owner of the business property used by same." Freire signed as President on behalf of Strategic.

Organics was not sold, and in April 2007, Organic and Strategic entered into a different contract (the Contract) under which Strategic agreed to provide Freire to serve as President of Organic, and Organic agreed to pay Strategic $12,000 per month for those services. The "essential duties and responsibilities" of Strategic were set forth in an exhibit to the Contract, and Strategic specifically agreed "to use its best efforts to achieve the revenue and pre-tax profit performance objectives . . . determined by [Strategic] and approved by the Board of Directors." The Contract included an integration clause stating: "This Agreement, together with the documents and exhibits referred to herein, embodies the entire understanding among the parties. This Agreement may be modified only by a writing duly executed by all parties."[1] The Contract also included a mediation and arbitration clause requiring "[a]ny controversy between the parties arising out of this Agreement" to be submitted first for mediation and, if no resolution is achieved, to binding arbitration before JAMS in Orange County. The Contract was signed on

---

[1] The Contract made no reference to the December 2005 Services Agreement.

behalf of Organic by Helen Watkins as Vice President; it was signed on behalf of Strategic by Freire as Principal.

B.   *Disputes Upon Termination of the Contract*

Organic terminated the Contract in February 2008.  Strategic contended that at the time the Contract was terminated, Organic owed it past due fees as well as other fees related to the termination.  In accordance with the arbitration provision of the Contract, Strategic demanded mediation over the amounts due.  The parties engaged in mediation in September 2008, but no resolution was reached.  Strategic served a demand for arbitration on Organic's counsel in October 2008; JAMS opened an arbitration proceeding, but Organic contested JAMS' jurisdiction and refused to participate.

In November 2008, Organic filed a lawsuit against Freire and Strategic alleging causes of action for breach of fiduciary duty, intentional misrepresentation, conversion of money, accounting, negligence, fraud and deceit, and rescission.  All of the causes of action except the sixth cause of action for fraud and deceit expressly related to the Contract and/or Freire's conduct under the Contract.  The sixth cause of action made reference to the Services Agreement, and alleged that a transaction fee Organic paid to Strategic for a sale of property that took place while Freire was president of Organic was improper.  In the rescission cause of action, Organic alleged, among other things, that the Contract was voidable because Strategic entered into the Contract when its corporate powers were suspended by the Secretary of State.  The Watkins were not parties to Organic's complaint.

Freire and Strategic filed answers to Organic's complaint, and filed a cross-complaint (and a subsequent first amended cross-complaint) against Organic and the Watkins.  All of the causes of action in the cross-complaint were based upon

4

the services performed under the Contract; the cross-complaint alleged that the Watkins were liable as alter egos of Organic.

1.      *Motion to Compel Arbitration*

A few months after filing the cross-complaint, Freire and Strategic filed a motion to compel Organic -- and only Organic -- to arbitrate its claims. Freire and Strategic contended that Organic's first, second, third, fourth, fifth, and seventh causes of action were subject to the arbitration clause of the Contract, and that Organic's sixth cause of action was subject to the arbitration clause of the Services Agreement. Freire and Strategic also requested that further proceedings be stayed pending the final determination of the arbitration.

Organic opposed the motion to compel arbitration. It argued, among other things, that Strategic did not have the capacity to enter into a contract at the time it signed the Contract, because the corporation had been suspended by the State of California. Therefore, Organic argued, the Contract, including its arbitration provision, was void. In support of its opposition, Organic provided the declaration of its counsel, who stated that in October 2008, he obtained from the California Department of Corporations a certified copy of a notice of status for Strategic, which indicated that Strategic was a suspended corporation, and that it had been suspended since July 20, 2006. The notice -- which was attached as an exhibit to Organic's opposition (as well as to Organic's complaint) -- states that the Secretary of State suspended Strategic's powers, rights and privileges in July 2006 under the provisions of the Corporations Code, and that the Franchise Tax Board suspended Strategic's powers, rights and privileges in December 2007 under the Revenue and Taxation Code.

In support of its reply to Organic's opposition, Strategic submitted the declaration of its counsel, who stated that Strategic was granted a revivor of its

corporate status on December 23, 2008. Counsel attached a copy of the Certificate of Revivor to his declaration.

It appears that the trial court requested supplemental briefing regarding Freire's standing to enforce the arbitration provision of the Contract, since Freire was not a party to the Contract. Along with their supplemental brief, Freire and Strategic submitted a written ruling by the JAMS arbitrator on JAMS' jurisdiction to arbitrate. In that ruling, the arbitrator, retired Judge Luis Cardenas, concluded that (1) under the Contract, Strategic and Organic clearly intended to resolve all differences through arbitration; and (2) Organic has the right to be heard on the validity of the Contract, but that issue must be resolved in arbitration. The arbitrator noted, however, that he did not have the authority to order a reluctant party to proceed to arbitration, and therefore he could not proceed to arbitrate the disputes until the Superior Court ordered Organic to participate.

On July 23, 2009, the trial court issued its ruling on the motion to compel arbitration. The minute order stated: "The [motion to compel arbitration] is granted based on the agreements between the parties, together with the finding of Judge Luis Cardenas, Retired, that 'the contract and all controversies arising from the agreement between the parties are subject to the arbitration before JAMS, Orange County, California.' [¶] The case is dismissed and the court retains jurisdiction to (1) enforce the order to arbitrate the dispute, and (2) confirm the arbitration award."

2.      *Arbitration and Award*

The arbitration between Strategic and Organic was conducted on December 16, 2009. The arbitrator described the proceedings in the arbitration award issued February 19, 2010: "Richard Usher, Esq., appeared with his client, Joseph Freire, on behalf of the claimant Strategic Growth, Inc., a California Corporation; Richard

6

Hassen, Esq., represented the respondent but his client selected not to appear and not to pay its share of the fees. [¶] The arbitrator did allow Mr. Hassen to participate in the proceedings, including examination of claimant's witness and introduction of exhibit 'A' (Minutes of a Board of Director's Meeting dated February 11, 2008) on behalf of the defense. Organic did not call any witnesses."

The arbitrator noted that the jurisdictional basis for arbitrating the dispute was the Contract. The arbitrator also noted that the only witness at the arbitration was Freire, that he found Freire's testimony and evidence to be credible, and that there was nothing introduced to rebut Strategic's case. The arbitrator therefore found in favor of Strategic, and awarded it $103,200 (plus interest) for wages and contractual penalties, $38,357.75 in attorney fees, and $7,900 in costs.

3. *Strategic's Petition to Confirm Arbitration Award and Motion to Correct Order and Lift Stay*

Following issuance of the arbitration award, Strategic filed a petition to confirm the award against Organic. Strategic also filed a motion to correct what it believed was a clerical error in the trial court's order granting Strategic's motion to compel arbitration. Strategic noted that the trial court had ordered the case dismissed when it granted Strategic's motion to compel Organic to arbitrate. It argued that the case should have been stayed under section 1281.4 of the Code of Civil Procedure[2] because it had filed a cross-complaint seeking to hold the Watkins liable as alter egos. It explained that "[a]s those individual[s] did not execute the original Contract as individuals, they were not subject to the arbitration provision of the Contract and were not parties to the JAMS arbitration. Thus, the issue of their alter ego liability for [Organic's] obligations was not determined in the

---

[2]    Further undesignated statutory references are to the Code of Civil Procedure.

arbitration.  Upon the entry of judgment based on the arbitration award, [Strategic] seeks to proceed on its alter ego claims in the Cross-Complaint to establish the [Watkins'] liability for the judgment."

In opposing Strategic's motion to correct the trial court's order, Organic argued that the asserted error was not clerical, but rather was a judicial error that could not be corrected because the case was dismissed.  Organic also argued that any claims Strategic had against Organic or the Watkins were encompassed in the arbitration award, and that Strategic was barred from prosecuting its alter ego claims against the Watkins.  Organic argued:  "Although Rex and Helen Watkins are not individual parties to the Contract containing the arbitration clause, [Strategic] must and has arbitrated all of its claims against them as called for in the arbitration agreement of the Contract."

In its reply to Organic's opposition, Strategic stated:  "The alter ego claims against [Organic's] shareholders, Rex and Helen Watkins, were not subject to arbitration, have not been litigated or arbitrated and became ripe only once [Strategic] obtained a damage award against [Organic]. . . .  [¶]  Rex and Helen Watkins did not execute the Contract individually and thus were not bound by the arbitration agreement."  Strategic noted that its motion to compel arbitration only sought to compel Organic to arbitrate, and did not ask that its alter ego claims against the Watkins be arbitrated because it did not believe there was any arbitration jurisdiction over them.

At the hearing on Strategic's motion to correct the prior minute order, the trial court stated that there was no error:  "I did mean to dismiss the case.  The minute order accurately reflects what I intended to do; it wasn't a clerical error."  The court explained that it intended by its previous order to send all of the claims in the case to arbitration.  Addressing the claims against the Watkins, the court stated:  "As for the Watkins[], they are . . . not signatories to the 2007 Contract, but

8

they were signatories to the earlier contract [i.e., the Services Agreement] which contains an arbitration provision; and more importantly, all of the claims against them arose from the April 200[7] Contract as to which they are alleged to be alter egos." The court therefore indicated it would order the matter back to arbitration for the arbitrator "to consider all of the claims of all of the parties."

The court then asked if anyone wished to be heard. Counsel for Strategic and Freire questioned the court about ordering the Watkins to arbitrate even though they were not signatories to the Contract. The court responded that they were signatories to the Services Agreement. Counsel replied, "Right, but it's not subject to the pending arbitration. . . . [¶] Nobody has moved those claims to arbitration." The court stated that it was making the order on its own motion, because the parties all agreed to have binding arbitration. Counsel for Strategic and Freire noted that the Services Agreement does not allow for arbitration in Orange County, where the arbitration was held under the Contract. Counsel explained, "They are separate contracts. They are separate issues. They are totally separate matters." Nevertheless, the court ordered that the claims against the Watkins be arbitrated before retired Judge Cardenas. Counsel for Organic and the Watkins did not make any comment during this exchange.

4.      *Organic's Motion for Clarification of Order*

Although the trial court issued its order sending all parties back to arbitration in April 2010, no action was taken until September 2011, when Strategic filed a claim with JAMS seeking to arbitrate the alter ego claims against the Watkins. The parties' attorneys did not agree on the scope of the issues to be arbitrated under the trial court's order, so the matter was submitted to the JAMS National Arbitration Committee. The Committee issued a ruling stating: "'JAMS views the Court's Minute Order as authorization to proceed with arbitration before Judge

9

Cardenas on the claims for alter ego liability of Rex Watson [*sic*] and Helen Watson [*sic*].'"  The attorneys still could not agree to the scope of phase two of the arbitration, so the arbitrator ordered briefing and oral argument.  On January 21, 2012, the arbitrator issued a written ruling, finding that (1) the award in phase one remained in full force and effect; (2) Strategic may present evidence on its alter ego theory in phase two; and (3) Organic's claims were no longer before the arbitrator and would not be included in phase two.

In April 2012, Organic filed a motion with the trial court, seeking clarification of the court's April 2010 order.  Organic noted that Strategic filed a claim for further arbitration with JAMS stating that the court had ordered the parties to arbitrate all remaining disputes, but Organic contended that the court ordered the parties to resolve *all* disputes and claims of all parties.  Organic argued that, under this order, the arbitration must include the claims Organic alleged in its complaint, because they were not addressed in the original arbitration.  Organic also argued that Strategic should be barred by res judicata from arbitrating its alter ego theory because it could have been raised in the previous arbitration, but at the same time Organic argued that the Watkins were not parties to the Contract and therefore could not be parties to any arbitration.

The second phase of the arbitration was scheduled for May 16, 2012, the day after Organic's motion for clarification was scheduled to be heard.  Counsel for Organic contacted JAMS to inform the arbitrator that a motion for clarification had been filed, and to request a continuance of the arbitration due to the court hearing and the unavailability of Helen Watkins to appear at the arbitration due to health issues.  The arbitrator denied the request (as well as a subsequent request for a continuance), finding that Organic and the Watkins had no standing to request a continuance because they had not yet posted the required arbitration fees.

10

At the hearing on Organic's motion for clarification, the trial court reviewed its records and the arbitrator's award in phase one and the arbitrator's ruling on the scope of phase two of the arbitration. The court concluded that the arbitrator intended by the award in phase one to deny Organic's claims against Strategic and/or Freire based upon Organic's implied waiver of those claims due to its refusal to pay the arbitration fees. The court also reiterated that it believed the alter ego claims against the Watkins were arbitrable because there were two agreements (i.e., the Services Agreement and the Contract), both of which had arbitration provisions. The court acknowledged that the Watkins were parties only to the Services Agreement, but reasoned: "Since the parties' only relationship is contractual, the two agreements taken together can be read as an accord among all of the parties to resolve all the disputes that arise from the relationship by way of arbitration." The court then clarified its April 2010 order, ordering the parties to return to the arbitrator to resolve any disputes and/or claims that were not resolved by the award in phase one, and deferring to the arbitrator to determine what disputes and/or claims remain to be resolved.

5.    *Second Arbitration*

The second phase of the arbitration was conducted on May 16, 2012. Organic, the Watkins, and their counsel did not appear for the proceeding. Strategic put on its evidence regarding the alter ego issue, and the arbitrator took the matter under submission. The arbitrator issued the final award on July 7, 2012. The arbitrator found the Watkins were alter egos of Organic and are personally responsible for payment of all awards and judgment rendered in both phases of the arbitration, and awarded Strategic $32,240 in attorney fees for phase two of the arbitration proceedings, as well as reimbursement of $8,824 in JAMS fees, plus interest on the entire award.

11

6.     *Petition to Confirm Arbitration Award*

Strategic filed a petition to confirm the arbitration award. Organic opposed the petition, and asked the trial court to vacate the award. Organic noted that the arbitrator refused to continue the second phase of the arbitration even though Organic submitted evidence that Helen Watkins was unable to travel to the proceedings due to a medical issue. It argued that the arbitrator's refusal to continue, based upon financial reasons (i.e., their lack of standing to request a continuance because they failed to pay the arbitration fees), prevented Organic and the Watkins from presenting evidence showing that the Watkins were not alter egos of Organic.

The trial court confirmed the arbitration awards from both phases and denied Organic's motion to vacate the awards. Judgment was entered in favor of Strategic and Freire, from which Organic and the Watkins timely filed a notice of appeal.

## DISCUSSION

A.     *The Enforceability of the Contract Was an Arbitrable Issue*

As noted, in opposing Strategic's original motion to compel arbitration, Organic submitted evidence that Strategic's corporate status had been suspended at the time it entered into the Contract. Organic argued that Strategic therefore did not have the capacity to enter into the Contract, and the Contract, with its arbitration provision, was void. In reply, Strategic argued that its suspension by the Franchise Tax Board was not effective until December 2007 -- after the Contract was signed -- and that, in any event, it was granted a certificate of revivor, making the Contract fully enforceable. On appeal, Organic and the Watkins argue that the trial court committed reversible error by failing to hold an evidentiary

12

hearing to determine whether the Contract was enforceable before the court ordered the parties into arbitration. They are mistaken.

The California Supreme Court has instructed that "when a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement -- either fraud in the execution voiding the agreement, or a statutory defense of waiver or revocation [citation] -- that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense. [Citation.]" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).)

In this case, had Organic presented evidence to the trial court indicating that the Contract was void at its inception, we might find the court erred by not holding an evidentiary hearing. But Organic's evidence indicated only that the Contract was *voidable* rather than void, because "[a] contract entered into by a suspended corporation is not void but is merely voidable by the other party." (*Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 669; see also Rev. & Tax. Code, § 23304.1.) "'Voidable' means subject to be avoided by judicial action of a court of adequate jurisdiction." (*Depner v. Joseph Zukin Blouses* (1936) 13 Cal.App.2d 124, 127.) A voidable contract, however, remains in full force and effect until there is a judgment declaring it void. (*Id.*)

The difference between a void contract and a voidable one is significant in this case. When a party to a contract that includes an arbitration clause alleges

13

facts supporting a claim that the contract is void, the trial court must conduct an evidentiary hearing on that claim before the court may send the matter to arbitration. (*Rosenthal*, *supra*, 14 Cal.4th at p. 413.) The reason for this is that if the contract is void, the parties have not agreed to arbitrate any controversy. (*Id.* at p. 416.) But where the party opposing arbitration alleges facts showing that the contract is voidable, as in this case, no such hearing is required because the contract -- including the arbitration provision -- remains in full force and effect until the contract is found to be void.

If the parties to a voidable (but not void) contract agreed that all disputes arising out of a contract would be resolved in binding arbitration, a dispute regarding the enforceability of the contract ordinarily is subject to that arbitration clause because the contract is in full force and effect until it is found (by the arbitrator) to be void. We say *ordinarily* because it is possible that this rule might not apply where a party to the contract seeks rescission of the contract based upon the suspension of corporate powers of the other party under the Revenue and Taxation Code. That is because the statutes governing contracts voidable the under Revenue and Taxation Code provide that a party seeking to exercise its right to declare a contract to be voidable "may exercise that right *only in a lawsuit* brought by either party with respect to the contract *in a court of competent jurisdiction*." (Rev. & Tax. Code, § 23304.5, italics added.) Thus, it appears that only the trial court, and not the arbitrator, can resolve such a claim.

This statutory provision does not assist Organic in this case, however, because the evidence it submitted showed that Strategic's corporate powers were not suspended *under the Revenue and Taxation Code* at the time it entered into the Contract. Instead, the evidence showed that, although Strategic's corporate powers were suspended under the *Corporations Code* beginning in July 2006, its powers were not suspended under the Revenue and Taxation Code until December 2007,

14

several months after it signed the Contract. We have found no statutory provision (and Organic has cited to none) requiring a party seeking to exercise its right to declare a contract voidable under the Corporations Code to exercise that right only in a lawsuit brought in a court of competent jurisdiction. Therefore, we conclude that the issue of enforceability of the Contract is subject to arbitration, as in most cases involving voidable contracts. Thus, the trial court did not err in granting Strategic's motion and ordering Organic to arbitration.

B.     *The Trial Court Erred by Ordering the Watkins to Arbitration Without First Determining Whether They Were Alter Egos of Organic*

The claims Strategic and Freire asserted in their cross-complaint against the Watkins (who were not parties to the complaint) all were based upon the Contract. The Watkins did not sign the Contract in their individual capacity; Strategic sought to hold them liable as alter egos of Organic. Recognizing that the Watkins were not parties to the arbitration provision of the Contract, Strategic's motion to compel arbitration was directed only at Organic, and the subsequent arbitration involved only Organic. On its own motion, however, the trial court ordered the Watkins to arbitration because they were signatories to the earlier Services Agreement, which also had an arbitration provision.

On appeal, Organic and the Watkins contend the trial court committed reversible error by ordering the claims against the Watkins to arbitration without conducting an evidentiary hearing to determine whether the Watkins were bound by the contract as alter egos of Organic. We agree.

"The right to arbitration depends on a contract. [Citation.] Accordingly, a party can be compelled to submit a dispute to arbitration only where he has agreed in writing to do so. [Citation.] While arbitration is a favored method of resolving disputes, the policy favoring arbitration cannot displace the necessity for an

15

agreement to arbitrate [citation] and does not extend to those who are not parties to such an agreement. [Citation.] Whether or not an arbitration agreement is operative against a person who has not signed it involves a question of 'substantive arbitrability' which is to be determined by the court. [Citation.]" (*Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271; accord, *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1512.)

Strategic and Freire argue the trial court properly relied on the arbitration provision in the Services Agreement as support for its order compelling arbitration of their cross-claims against the Watkins.[3] In making this argument, they rely upon cases that hold that "signatories must arbitrate all claims that '"have their roots in the relationship between the parties which was created by the contract."'" (Citing *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1315-1316; *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1003; *Merrick v. Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 219.) They argue that "[c]laims are rooted in the relationship formed by the contract as long as they are not 'wholly independent' of the agreement." (Citing *Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1408.)

Their argument fails because the claims at issue here *are* wholly independent of the only agreement to which the Watkins are signatories, i.e., the Services Agreement. The Services Agreement related to Strategic providing services to *sell* Organic. The Contract related to Strategic providing Freire's services to *run* Organic. Each contract had an integration clause and neither made reference to the other. In fact, the Services Agreement expressly stated that it "relates solely to Services described herein." All of the causes of action alleged in Strategic's cross-

---

[3] This argument is, of course, directly contrary to the position they took in the trial court.

16

complaint seek to recover money allegedly owed to Strategic and/or Freire for services provided in running Organic. Those causes of action are rooted in the relationship formed by the Contract, and have nothing to do with the relationship formed by the Services Agreement. Thus, the Watkins could not be compelled to arbitrate based upon the arbitration provision in the Services Agreement.[4]

Although the trial court could have compelled the Watkins to arbitrate had it first conducted an evidentiary hearing and found they were alter egos of Organic (see, e.g., *Southern Cal. Pipe Trades Dist. Council No. 16 v. Merritt* (1981) 126 Cal.App.3d 530, 536), it did not do so, and therefore the judgment must be reversed to the extent it confirms the arbitration award for phase two of the arbitration. A question remains regarding the proper procedure on remand to the trial court. Strategic and Freire argue that on remand, the portion of the judgment confirming the arbitration award against Organic for phase one should remain intact, and the trial court should decide whether the judgment should be amended to add the Watkins as additional judgment debtors on an alter ego theory. We agree.

"Judgments may be amended to add additional judgment debtors on the ground that a person or entity is the alter ego of the original judgment debtor. [Citations.] 'Amendment of a judgment to add an alter ego "is an equitable

---

[4] We are not persuaded by Strategic and Freire's argument that the Watkins forfeited this issue. While they are correct that *the Watkins* did not make an appearance to contest the trial court's order below, *Organic* did, and specifically argued that the Watkins could not be compelled to arbitrate because they did not sign the Contract. The fact that Helen Watkins "participated in pre-arbitration proceedings" does not constitute a waiver of her right to contest the order compelling her to arbitrate, because her participation, if any, came after the trial court ordered her to arbitration. (*Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 299-300, fn. 17 [party's acquiescence in order made over party's objection does not waive party's right to challenge order on appeal].)

17

procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. . . . 'Such a procedure is an appropriate and complete method by which to bind new . . . defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit.' . . .'"  [Citation.]"  (*Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conf. Center Bd.* (1996) 41 Cal.App.4th 1551, 1555 [involving a motion to add an alter ego as additional judgment debtor to judgment confirming an arbitration award]; see also *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1072-1075.)

Accordingly, we direct the trial court on remand to hold an evidentiary hearing and determine whether the judgment confirming the arbitration award for the first phase of the arbitration may be amended to add the Watkins as additional judgment debtors.  In doing so, we emphasize that, to hold the Watkins liable for the judgment against Organic, Strategic and Freire must show not only that the Watkins were alter egos of Organic, but also that they had control of the first arbitration in their capacity as alter egos of Organic.  (See *Minton v. Cavaney* (1961) 56 Cal.2d 576, 581.)

C.     *There Were No Grounds For Vacating the Award as to Organic*

Organic and the Watkins contend the trial court erred by denying their motion to vacate the arbitration awards on the grounds that (1) the arbitrator refused to grant their request for a continuance of the phase two arbitration proceeding, and (2) the arbitrator conducted both phases of the arbitration without allowing Organic or the Watkins to present any evidence.  We need not address the first ground in light of our conclusion that the judgment must be reversed to the

18

extent it confirmed the arbitration award for phase two of the arbitration. As to the second ground, we find no error.

Section 1282.2 provides in relevant part: "Unless the arbitration agreement otherwise provides . . . [¶] The parties to the arbitration are entitled to be heard, to present evidence and to cross-examine witnesses appearing at the hearing, but rules of evidence and rules of judicial procedure need not be observed." (§ 1282, subd. (d), italics added.) Under section 1286.2, the trial court must vacate an arbitration award "if the court determines any of the following: [¶] . . . [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (5) The rights of the party were substantially prejudiced by . . . the refusal of the arbitrators to hear evidence material to the controversy."

Organic argues the trial court was required to vacate the arbitration award under these provisions because "it is indisputable that the arbitrator refused to allow Organic to be heard or to present evidence during the first arbitration hearing simply because Organic had not paid its arbitration fees." Organic's argument fails for two reasons.

First, Organic's statement is not entirely accurate. As the arbitrator stated in his ruling on the scope of the second phase of the arbitration proceedings, "the arbitrator allowed Mr. Hassen [Organic's attorney] to participate in the proceedings [in phase one], where he examined witnesses and introduced exhibits. However, he was not permitted to present evidence on the cross-action filed by [Organic]." In other words, Organic was not precluded from presenting evidence in *defense* of Strategic's claims; it simply was not allowed to present evidence in support of its own claims for affirmative relief in light of its failure to perform its obligation under the arbitration agreement to pay its share of the arbitration fees.

19

Second, Organic failed to meet its burden to show it suffered substantial prejudice as a result of the arbitrator's ruling. Under the express language of section 1286.2, subdivision (a)(5), the trial court must vacate an arbitration award only when it determines that "[t]he rights of the party were substantially prejudiced by . . . the refusal of the arbitrators to hear evidence material to the controversy." Thus, a party seeking to vacate an arbitration award "must show substantial prejudice . . . even though the protested irregularity involves some violation of an applicable statute." (*United Brotherhood of Carpenters etc., Local 642 v. DeMello* (1972) 22 Cal.App.3d 838, 840.) Prejudice is not shown by simply pointing to the irregularity. Instead, to establish substantial prejudice from a refusal to hear evidence, the party seeking to vacate the award must make a showing that the arbitrator prevented the party from presenting a potentially meritorious argument or defense. (*Pacific Vegetable Oil Corp. v. C.S.T., Ltd.* (1946) 29 Cal.2d 228, 240-241.) The refusal to hear evidence is substantially prejudicial only if "the arbitrator might well have made a different award had the evidence been allowed." (*Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 439.)

In this case, Organic made no attempt -- in this court or in the trial court -- to show it had a potentially meritorious defense to Strategic's claims, and instead relied solely on its (not entirely accurate) assertion that it was precluded from presenting evidence in the arbitration.[5] In other words, Organic failed to show its

---

[5] Organic's assertion in its appellants' reply brief that it was not required to make an offer of proof in the arbitration to preserve its argument that the arbitration award must be vacated misses the point. The issue is whether Organic made an adequate showing *in the trial court* that the evidence it was precluded from presenting in the arbitration raised a meritorious defense. Without such a showing, the trial court had no ground to vacate the award under section 1286.2, subdivision (a)(5).

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20

rights were substantially prejudiced by the arbitrator's ruling. Therefore, the trial court did not err by denying Organic's request to vacate the first arbitration award.

## DISPOSITION

The judgment is reversed to the extent it confirmed the arbitration award for phase two of the arbitration, and affirmed in all other respects. On remand, the trial court shall conduct an evidentiary hearing to determine whether the judgment should be amended to add the Watkins as additional judgment debtors. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.          EDMON, J.*

21