Filed 8/31/20 Peter L. Kaufman, Panish etc. v. Prospect Funding CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PETER L. KAUFMAN, PANISH, SHEA & BOYLE LLP, <br><br> Petitioners and Appellants, <br><br> v. <br><br> PROSPECT FUNDING LLC, <br><br> Defendants and Respondents. | B293259 <br><br> Los Angeles County Super. Ct. No. BS169525 |

Appeal from a Judgment of the Superior Court of Los Angeles County. Daniel Murphy, Judge. Reversed.

Peter L. Kaufman, Panish, Shea & Boyle for Petitioners and Appellants.

Patrick R. Mahoney and Tyson W. Kovash for Respondent.

The law firm of Panish Shea & Boyle (PS&B) and one of its attorneys, Peter L. Kaufman, Esq., appeal from a judgment confirming an arbitration award against them in favor of Prospect Funding (NY) LLC.  We reverse, concluding the arbitrator exceeded his authority in finding Kaufman and PS&B agreed to arbitrate disputes arising out of a litigation funding agreement between their client, La-Phosa Sangkaphim, and Prospect, and by entering an arbitration award against them *in absentia.*

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

1.      *The Underlying Personal Injury Litigation and Prospect's Purchase of an Interest in the Litigation.*

Kaufman and PS&B represented La-Phosa Sangkaphim on a contingency basis in a personal injury suit in Riverside County Superior Court.

While the lawsuit was pending, Prospect provided $10,000 to Sangkaphim under an undated "Sale and Repurchase Agreement" (Agreement) drafted by Prospect. The Agreement provided that Prospect, as the "Purchaser," would buy from Sangkaphim, as the "Seller," an interest in Sangkaphim's eventual recovery, if any. The Agreement specified a "Purchase Price" of $13,600, of which Sangkaphim received $10,000 ($3,600 was a fee paid to Prospect). In exchange, Prospect acquired a right to receive proceeds from any eventual settlement or recovery through Sangkaphim's "repurchase" of the interest sold to Prospect. The amount Prospect would receive varied depending on when Sangkaphim "repurchased" the interest sold. If the interest were "repurchased" within six months, Prospect would be paid $17,680. The amount to be paid to Prospect out of any

2

recovery (the "Repurchase Amount") increased steeply to a maximum of $46,240 (the "Prospect Ownership Amount") if paid after April 15, 2019.[1] The Agreement contained a liquidated damages clause providing in the event Sangkaphim did not comply with the Agreement, "[Sangkaphim] SHALL IMMEDIATELY PAY TO [Prospect] LIQUIDATED DAMAGES IN THE AMOUNT OF TWICE THE PROSPECT OWNERSHIP AMOUNT REGARDLESS OF THE OUTCOME OF THE LEGAL CLAIM," plus costs.

The Agreement provided for mandatory arbitration of claims, including the determination of arbitrability: "[i]nstead of suing in court, [Prospect] and [Sangkaphim] agree to arbitrate all disputes . . . . " and "THE PARTIES AGREE THAT THE ISSUE OF ARBITRABILITY SHALL BE DECIDED BY THE ARBITRATOR AND NOT BY ANY OTHER PERSON." Prospect and Sangkaphim were the only parties to the Agreement.

Underneath Sangkaphim's signature on the last page of the Agreement, Kaufman signed a separate "Certification of Seller's Attorney" (Certification), also drafted by Prospect. It states Kaufman "certifies to [Sangkaphim] that [Kaufman] has reviewed the terms and conditions of this . . . Agreement and explained [them] to [Sangkaphim]." The Certification also states: "I have a written fee agreement with Purchaser [sic][2] to pay my

---

[1]     This structure is known as a prepaid forward contract. (See Wood, *Capital Gains, Litigation Finance & Legal Fees*, (Mar. 2015) Vol. 23, No. 8 The M&A Tax Report (Woodllp.com/publications/articles/pdf/capital_gain_litigation.pdf) .)

[2]     In the Agreement, Sangkaphim was referred to as the "Seller" while Prospect was the "Purchaser." Kaufman's

3

fees contingent upon the outcome of the case. I agree that all disputes regarding this agreement will be resolved via arbitration and I have explained this to [Sangkaphim]. All proceeds of the legal claim will be disbursed via the attorney's trust account and the attorney is following the written instructions of [Sangkaphim] with regard to this [Agreement] and the Irrevocable Letter of Directions which attorney has acknowledged." Below Kaufman's signature was a signature block for Prospect.

The Irrevocable Letter of Direction (Letter), referenced in the Agreement and Certification, is dated October 6, 2015. Prospect prepared it for Sangkaphim's signature, and addressed it to Kaufman. The Letter directed Kaufman, among other things, to "place an assignment, consensual lien and security interest against any and all settlement proceeds . . . after payment of legal fees and reimbursable costs, and to protect and satisfy this assignment, consensual lien and security interest of $46,240 which is the Prospect Ownership Amount." It also directed Kaufman to pay Prospect in full before disbursing any settlement funds to Sangkaphim. The Letter states that in the event of a dispute over Prospect's ownership amount, Kaufman is to hold the amount in dispute in PS&B's trust fund "until the dispute is resolved by arbitration as per [Sangkaphim's] agreement with [Prospect]." The concluding sentence of the letter states, "By signing the acknowledgement below, you acknowledge that this letter is from me and that you will comply with this irrevocable Letter of Direction for the benefit of [Prospect]."

---

contingent fee agreement was with Sangkaphim, not Prospect, so this is a scrivener's error. The contingent fee agreement is not part of the record.

In an "Attorney Acknowledgment" (Acknowledgment) placed below Sangkaphim's signature line in the Letter, Kaufman states, among other things: "[¶] I . . . acknowledge receipt of this Letter from my client; [¶] I will honor my client's irrevocable letter of direction . . . as per instructions above. . . . [¶ . . . ¶] I acknowledge that all disputes arising out of this transaction will be resolved via arbitration per the Sale and Repurchase Agreement and the irrevocable letter of direction . . .[;] [and] [¶] [Prospect] has relied upon this letter and acknowledgement . . . ."

### 2. Settlement of Claim and Arbitration.

The litigation settled for $350,000 in February 2016, with net settlement proceeds to Sangkaphim of $70,120.87, after deduction of attorneys' fees, medical liens, non-recourse loans, and other costs and expenses. At the time of the settlement, pursuant to the terms of the Agreement, $17,680 was due Prospect, but PS&B did not pay it. Instead, PS&B later sent Prospect a check for $5,000 with a letter stating, "[e]nclosed please find a check in the amount of $5,000 as re-payment for the loan provided to [Sangkaphim]. Unfortunately, the case settled for much less than the actual value and we have no additional funds."[3]

Prospect submitted a "Certification of Damages" to Sangkaphim and Kaufman, asserting $138,720 plus costs was due, consisting of the Prospect Ownership Amount of $46,240

---

[3]    Apparently, PS&B mistakenly disbursed Sangkaphim's share of the settlement proceeds, except for $5,000, to Sangkaphim, without first paying Prospect. When PS&B discovered the error, it sent the remaining $5,000 to Prospect.

5

*plus* liquidated damages of two times that amount ($92,480). As a result of PS&B's failure to pay, Prospect took the matter to arbitration in July 2016, alleging breach of contract against Kaufman and PS&B. Sangkaphim was not a party to the arbitration. PS&B notified the arbitrator that neither it nor Kaufman was a party to any agreement to arbitrate and that they objected to the arbitration. Kaufman and PS&B further objected to Prospect's calculation of damages because it omitted the $5,000 payment PS&B had made and its claim for liquidated damages of $92,480 exceeded the maximum $46,240 awardable under the Agreement. PS&B and Kaufman did not present evidence at or participate in the arbitration hearing.

On November 10, 2016, the arbitrator found for Prospect, concluding the Acknowledgment and Certification bound Kaufman and PS&B to the arbitration clause in the Agreement, and concluding (apparently incorrectly) that they failed to tender any funds to Prospect. The arbitrator ordered PS&B to pay $138,720 to Prospect. He noted that PS&B challenged the jurisdiction of the arbitration, but concluded "[t]he documents signed by Peter Kaufman, whom the Arbitrator finds to be an agent of [PS&B]" established that PS&B agreed to arbitration. Further, he concluded the liquidated damages award was not inequitable because "[PS&B] blurs the distinction between a true loan and a purchase of a contingent interest in a lawsuit. The latter involves a substantial amount of risk to Prospect because the personal injury case may either result in a defense verdict or be otherwise dismissed."

6

*3.     Petitions to Vacate/Confirm Award.*

On May 1, 2017, Kaufman and PS&B filed a motion to vacate the award, asserting Prospect failed to establish any arbitration agreement with them because they were not parties to the Agreement or its arbitration clause, nor were they parties to any agreement with Prospect. Thus, they asserted, because they had no contractual obligation to arbitrate, the arbitrator exceeded his authority by deciding the arbitrability issue and making the award. PS&B and Kaufman denied that the Letter bound them in any fashion to the terms of the Agreement.

Prospect responded by filing a motion to confirm the award, asserting that the arbitrator did not exceed his authority in ruling on the arbitrability of the contract because Kaufman twice agreed (in the Certification and Acknowledgement) to arbitration. Further, it contended PS&B was bound by the arbitration clause based on agency and contract principles by acting as Sangkaphim's agent and fiduciary in connection with the contract. Prospect sought the full amount of the arbitration award plus interest and costs.

In reply, PS&B distinguished cases relying on agency principles on the ground that the party who was a signatory received a benefit, while, here, PS&B and Kaufman received no benefit from the contract or underlying transaction. PS&B also objected that Prospect's calculation of liquidated damages was excessive.

The trial court entered judgment on July 26, 2018, awarding Prospect $138,720, plus interest, legal fees and costs. It rejected Kaufman's and PS&B's argument that they were not parties to the arbitration agreement, relying on the sentence fragment in the Certification stating "I agree that all disputes

7

regarding this agreement will be resolved via arbitration . . . . " Regarding damages, the court concluded Kaufman and PS&B had not shown grounds for vacating the award under Code of Civil Procedure[4] section 1286.2 because the court could not review the arbitrator's reasoning nor the sufficiency of the evidence supporting the award, and an arbitrator does not exceed his powers merely by rendering an erroneous decision on a legal or a factual issue.

## DISCUSSION

### I.   STANDARD OF REVIEW

Generally, arbitration awards are not reviewable for errors of fact or law, even when the errors appear on the face of the award. (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.) Courts are authorized to vacate an award only if the award was (1) procured by corruption, fraud, or undue means; (2) issued by a corrupt arbitrator; (3) affected by prejudicial misconduct by the arbitrator; or (4) in excess of the arbitrator's powers. (*Ibid*.) "Under this [code] provision, the trial court is authorized to vacate an arbitrator's determination that he or she has the jurisdiction to resolve an issue" if arbitrability "is outside the scope of an arbitration agreement[.]" (*Glassman v. McNab* (2003) 112 Cal.App.4th 1593, 1598.) We conduct a de novo review except to the extent there are disputed factual issues. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383; *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511 ["trial court's resolution of disputed facts will be upheld if supported by substantial

---

[4]     All statutory references are to the Code of Civil Procedure unless otherwise noted.

8

evidence, but if there is no disputed extrinsic evidence, the trial court's decision on arbitrability is reviewed de novo [Citation.]"].)

## II. THE ARBITRATOR EXCEEDED THE SCOPE OF HIS POWERS BY DECIDING THE ISSUE OF ARBITRABILITY

Arbitration is a matter of contract and ordinarily a nonparty to the arbitration agreement cannot be compelled to arbitrate. (See, e.g., *AT&T Techs. v. Communs. Workers of Am.* (1986) 475 U.S. 643, 648 (*AT&T*); *Williams v. Atria Las Posas* (2018) 24 Cal.App.5th 1048, 1053.)

Generally, the court, not the arbitrator, decides the arbitrability of a dispute, but the parties to an arbitration agreement may, pursuant to their agreement, have the arbitrator decide the issue. (*AT&T, supra,* 475 U.S. at p. 649.) (This would, of course, require a valid arbitration agreement compelling the parties to arbitrate.) Unless the parties "clearly and unmistakably" so provide, however, whether they agreed to arbitrate the particular dispute must be decided by the court, not the arbitrator. (*Ibid.*; *Jackpot Harvesting, Inc. v. Applied Underwriters, Inc.* (2019) 33 Cal.App.5th 719, 730.) The willingness of parties to enter into arbitration agreements "would be 'drastically reduced' . . . [if an] arbitrator had the 'power to determine his own jurisdiction. . . .'" (*AT&T, supra*, 475 U.S. at p. 651.)

This rule "necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481.) If the "drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain," we construe the provision against the drafter under ordinary

9

contract principles. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 248.) Here, Prospect drafted all the documents, and they appear to be form contracts.

Recently, our Supreme Court addressed whether an attorney's acknowledgment to an agreement between the attorney's client and a third party would bind the attorney to the provisions of the underlying agreement. *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781 (*Monster*) held that an attorney's signature on a notation approving a client's settlement agreement as to form and content did not preclude a finding that the attorney also intended to be bound by terms of the agreement. (*Id* at pp. 785-786.) *Monster* observed that if the agreement itself contained no provision purporting to bind counsel, then "the question is easily answered. . . . In that circumstance, counsel's signature that he approved the agreement as to form and content could *only* mean he is approving it for his client's signature." (*Id.* at p. 792.)  On the other hand, "[a]n attorney's signature on an agreement containing substantive provisions imposing duties on counsel may reflect an intent to be bound even though counsel also approves the document for his client's signature." (*Ibid.*) Thus, *Monster* concluded in the case before it, a factfinder considering all circumstances could conclude the attorney intended to be bound by confidentiality provisions in the agreement, and the question was one of fact. (*Id.* at pp. 792, 795.)

But nothing in *Monster* precludes interpreting an attorney certification as a matter of law where no factual issues exist. The parties here did not present any extrinsic evidence to aid the interpretation of the contracts, and both the arbitrator and trial court ruled as a matter of law on the meaning of the Certification

10

and Acknowledgment. Thus, we construe the various documents as a matter of law.

As *Monster* envisions, an attorney's certification must be considered with the contract to which it is appended. Here, by solely relying on language in the Certification and Acknowledgment, Prospect takes the provisions out of context and fails to consider their language in concert with the Agreement and Letter. Indeed, the only way the references to arbitration in the Certification and Acknowledgment can be interpreted to bind Kaufman and PS&B to arbitrate is to ignore the terms of the agreements to which they are appended. That runs contrary to a central principle of contract interpretation requiring "[t]he whole of a contract to be taken together," "to give effect to every part, if reasonably practicable, with each clause helping to interpret the other." (Civ. Code, § 1641.) The language of a provision should be construed in context, in view of the intended function of the provision and of the contract as a whole. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265.)

Under *Monster,* we consider whether the attorney had any duties under the agreements to which an arbitration clause could apply. Kaufman and PS&B were not parties to the Agreement and had no duties under it. The Agreement's liquidated damages clause explicitly states that such damages were payable by Sangkaphim to Prospect. Given his lack of duties in the Agreement, the only reasonable interpretation of the Certification of the Agreement is — as it says — that Kaufman "has reviewed the terms and conditions of this Sales and Repurchase Agreement and explained such terms and conditions to [Sangkaphim]." The sentence reading "I agree that all disputes regarding this agreement will be resolved via arbitration and

11

that I have explained this to the seller" can only reasonably be understood as Kaufman certifying that he has reviewed the Agreement, agrees the Agreement requires the parties to it (i.e., Sangkaphim and Prospect) to arbitrate their disputes, and he has explained that to Sangkaphim. We know from the first sentence of the Certification that "this agreement" refers to the Agreement, to which neither Kaufman nor PS&B was a party, rather than some new agreement contained in the Certification. We cannot read the use of the phrase "I agree" to mean that Kaufman also independently agreed to arbitration because that would be contrary to the stated purpose of the Certification (explaining the Agreement's terms to Sangkaphim), and expand the scope of the Agreement's arbitration provision to include Kaufman, a non-party. To the extent there is any uncertainty, we construe the provision against the drafter, Prospect. (*Sandquist v. Lebo Automotive, Inc., supra,* 1 Cal.5th at p. 248.) It is far from a "clear and unmistakable" agreement by Kaufman to arbitrate disputes with Prospect.

The Letter directed Kaufman to pay Prospect out of any settlement proceeds before paying Sangkaphim and stated that Kaufman was to hold any disputed funds until the dispute was resolved. Although Kaufman did have independent duties to his client under the Letter (holding settlement funds in PS&B's trust account and forwarding the Ownership Amount to Prospect), the language of both the Letter and the Acknowledgement clearly contemplates any arbitration would solely involve Sangkaphim and Prospect, not Kaufman. The Letter directs Kaufman to "retain only the amount in dispute in your trust fund until the dispute is resolved *as per my agreement with Prospect . . . .*" Again, Kaufman was not a party to that agreement. In the

12

Acknowledgment, Kaufman similarly merely observes that all disputes arising out of this transaction will be resolved via arbitration *"per the [Agreement] and the irrevocable letter of direction."* (Emphasis added.) Neither the Agreement nor the Letter requires Kaufman to arbitrate, so we have no reason to conclude Kaufman would have intended his statement that disputes would be resolved *"per"* those documents to require him to arbitrate disputes involving him or his firm.

Moreover, Kaufman and PS&B cannot be bound by any purported agreement to arbitrate with Prospect because they did not receive any consideration. (Civ. Code, § 1550; *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1006 ["consideration is an essential element of a contract"].)

Finally, we cannot overlook the fact that Kaufman and PS&B were serving as Sangkaphim's attorneys, with all the fiduciary and ethical duties that relationship entails. Their duties under the Letter were to their client, Sangkaphim, not Prospect. Indeed, we assume the transaction was structured as it was — i.e., not including Kaufman and PS&B as parties to the Agreement but instead having Sangkaphim impose duties on his lawyers through a letter of instruction — to avoid creating a conflict of interest necessitating a conflict waiver from Sangkaphim due to the parties' adverse interests. No such waiver was sought or obtained. (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 84 [necessity of client waiver of adverse interests].)

Given this context, the only reasonable interpretation of the Acknowledgment is that Kaufman assented to do the things Sangkaphim requested of him in the Letter, and acknowledged that the terms of the Agreement and Letter include

13

Sangkaphim's consent to arbitrate disputes with Prospect. As a result, Prospect cannot claim it reasonably relied on the isolated statements in the Certification and Acknowledgment such that PS&B and Kaufman are bound to arbitrate by principles of promissory estoppel. (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225 [reliance must be reasonable for promissory estoppel to apply].)

We therefore conclude Appellants' purported consent to arbitrate any dispute arising out of the Agreement and Letter is not "clear and unmistakable." We reverse the trial court and direct it to enter an order vacating the arbitration award and enter judgment thereon in Appellants' favor. Consequently, we need not address the arbitrator's award of liquidated damages or his failure to acknowledge the $5,000 payment by PS&B.

**DISPOSITION**

The judgment of the superior court is reversed. The case is remanded for further proceedings consistent with this opinion. Appellants are to recover costs on appeal.

CURREY, J.

We concur:

WILLHITE, Acting P.J.

COLLINS, J.