[No. D015904. Fourth Dist., Div. One. Jan. 4, 1993.]

CITY OF SAN DIEGO, Plaintiff and Respondent, v.
WILLIAM DeLEEUW, Defendant and Appellant.

**COUNSEL**

Phillips, Campbell, Haskett, Noone & Ingwalson and Frederick C. Phillips for Defendant and Appellant.

John W. Witt, City Attorney, Eugene P. Gordon, Chief Deputy City Attorney, and Steven R. Gustavson, Deputy City Attorney, for Plaintiff and Respondent.

OPINION

**FROEHLICH, J.**—We affirm a judgment of the superior court, rendered after an order granted summary judgment in favor of plaintiff City of San Diego (City), requiring defendant DeLeeuw to pay $35,365.27 representing the City's entitlement to transient occupancy taxes collected in the operation of the Kona Kai hotel (as well as penalties and interest resulting from default in payment of the taxes).

DeLeeuw contends that summary judgment should not have been rendered because triable issues of fact were established as to:

1. Whether DeLeeuw was an "operator" as defined by the provisions of the Transient Occupancy Tax (San Diego Mun. Code,[1] § 35.0101 et seq.) so as to be liable for unremitted tax;

2. Whether DeLeeuw, even though found to be an "operator" after a transfer of interest in the hotel to a partnership of which he was a partner, can be held liable for taxes collected before the transfer;

3. Whether the total taxes owed were established or are in dispute.

Separate statements of fact were submitted by both parties in connection with the summary judgment motion. The facts summarized in the City's statement are not disputed by DeLeeuw. The statement filed by DeLeeuw is titled "Statement of Disputed Facts," but it and its supporting documentation constitute at minimum binding admissions of fact by DeLeeuw. From these statements, as well as representations made in DeLeeuw's appellate brief, the following essential facts emerge: The Kona Kai Club was operated from May 1985 through November 1988 by Kona Kai, Inc., a California corporation. As of December 1988 the hotel was transferred to Kona Kai Resort Associates, a partnership, of which DeLeeuw was a 25 percent partner.

Transient occupancy taxes were owed as of the date of transfer. They were unpaid because (1) a check tendered in the sum of $16,346 for such taxes was dishonored by the bank because of lack of funds in the account, and (2) a subsequent City audit revealed additional taxes owed for the period. At the time of the sale a fund of $206,625 was "held back" to pay creditors' claims, including any claims related to the transient occupancy tax. Although DeLeeuw asserts no knowledge of why the City's claims were not paid from this fund, and claims not to know the disposition of the fund, he does not now dispute the City's contention that the taxes were not paid.

---

[1]All code references are to the San Diego Municipal Code unless otherwise specified.

DeLeeuw's first contention is that he is not a person obligated, under the municipal code, to collect and remit the taxes, and is not responsible for their delinquency. Section 35.0114 imposes upon the "operator" of a hotel the obligation of collecting, reporting and remitting the tax. "Operator" is defined in section 35.0102, subdivision (g) as "[any] person who is the proprietor of the hotel, whether in the capacity of owner, lessee, sublessee, mortgagee in possession, licensee, or any other capacity." Kona Kai Resort Associates, as owner of the hotel, is clearly an "operator" obligated to collect and remit taxes. Under black-letter partnership law, DeLeeuw as a general partner of Kona Kai Resort Associates is jointly liable for the unpaid partnership debt, along with the partnership itself and the other partners. (Corp. Code, § 15015.) It is unavailing that DeLeeuw may not have been personally in charge of the hotel's operations.

DeLeeuw's second contention is that even if he be deemed an "operator" his period of operation was not that within which the taxes should have been collected and paid. Therefore, his liability must depend upon his status as a "Successor of Operator" under section 35.0137. This provision imposes liability upon a successor operator for a predecessor's tax obligation under the following terminology:

"If an operator who is liable for any tax or penalties under this Article sells . . . his business, his successor . . . shall withhold a sufficient portion of the purchase price to equal the amount of such tax or penalty until the selling operator produces a receipt from the Treasurer showing that the tax or penalty has been paid or a tax clearance certificate from the City Treasurer stating that no tax or penalty is due. If the seller does not present a receipt or tax clearance certificate within thirty (30) days after such successor commences to conduct business, the successor shall deposit the withheld amount with the City Treasurer pending settlement of the account of the seller."

Section 35.0138 then provides:

"If the successor to the business fails to withhold a portion of the purchase price as required, it shall be liable to the City for the payment of the amount required to be withheld. Within thirty (30) days after receiving a written request from the successor for a tax clearance certificate stating that no tax or penalty is due, the City Treasurer shall either issue the certificate or mail notice to the successor at its address as it appears on the records of the City

Treasurer of the estimated amount of the tax and penalty that must be paid as a condition of issuing the certificate."[2]

■ DeLeeuw contends that because his partnership withheld sums to pay creditors, it complied with the requirements of these code sections and therefore cannot be held liable under the successor liability provisions. The difficulty with this argument is that the municipal code sections contemplate actual payment of the taxes to the City; the provision for withholding is simply a mechanism to ensure payment. Section 35.0115 references the "responsibility [of a transferee] for unpaid collected taxes." The transferee, under section 35.0137, must withhold "a sufficient portion of the purchase price to equal the amount of . . . tax or penalty." Under section 35.0138 the successor "shall be liable to the City for the payment of the amount required to be withheld" if the proper amount is not withheld. Sections 35.0137 and 35.0138 contain provisions whereby the successor in interest can terminate this liability by seeking a "tax clearance certificate" from the City Treasurer. Such was not done in this case.

It is linguistically possible to contend that these sections simply require the withholding of the amount necessary to pay the taxes, and nowhere do they flatly state that the successor must "pay" this sum to the City. This interpretation would, however, undermine the obvious purpose of the code sections. We find that these code sections are intended to impose liability upon a successor for any taxes and penalties which may be due at time of transfer. The only way the successor can avoid this liability is to make sure that the taxes are properly determined and paid, and if the successor has any doubt about this his remedy is to seek a tax clearance certificate from the City.

■ Finally, DeLeeuw claims that an issue of fact remains regarding the computation of the tax. He contends that the audit performed by the City was incorrect, having not taken into consideration the costs of breakfasts included in guests' hotel bills, which charges arguably are not taxable. The short but conclusive answer to this contention is that DeLeeuw waived this issue at the trial level. The figures upon which the court's judgment was based are set forth with particularity in the City's statement of undisputed facts. Item 4 of that statement reflects the audit results, which would have included the alleged overtaxation by reason of inclusion of the costs of breakfasts. In his responsive paperwork DeLeeuw states that he "does not dispute any of the statements made in Statements 1 through 9 [of the City's

---

[2]The municipal code section in effect at the time of the transfer of the Kona Kai Club was section 35.0118. Its provisions insofar as pertinent to this case were the same as the present section 35.0138.

statement]." The trial court was entitled to rely upon this conclusive admission of fact.

## DISPOSITION

The judgment is affirmed.

Work, Acting P. J., and Benke, J., concurred.