[No. B157578. Second Dist., Div. Four. Nov. 4, 2003.]

PAUL R. GLASSMAN, Plaintiff and Respondent, v.
CECIL McNAB et al., Defendants and Appellants.

## COUNSEL

Law Offices of Girma H. Gebriel and Girma H. Gebriel for Defendants and Appellants.

Marshall & Perrigue and Grover A. Perrigue for Plaintiff and Respondent.

## OPINION

**CURRY, J.**—When respondent Paul R. Glassman, an attorney, requested payment for his services from appellants Cecil McNab and Scirocco Partners, appellants sought arbitration of Glassman's claim pursuant to Business and Professions Code section 6200 et seq. The arbitrators subsequently issued an award in Glassman's favor, and the trial court confirmed the award. Appellants contend that the trial court erred, arguing that the arbitrators exceeded their jurisdiction under Business and Professions Code section 6200 et seq., in determining that an attorney-client relationship existed between appellants and Glassman.

We affirm.

## RELEVANT FACTUAL AND PROCEDURAL
## BACKGROUND

On July 16, 1999, appellants submitted a petition for arbitration to the Los Angeles County seeking mandatory and binding arbitration of an attorney fee dispute. The petition alleged that Glassman, an attorney, sought $41,483.23 in fees from appellants, who denied the validity and basis of Glassman's claim.

Glassman's reply alleged that appellants had retained him pursuant to written agreement to serve as their agent in a then-pending bankruptcy proceeding. The reply further alleged that Glassman had secured a favorable result for appellants in the bankruptcy proceeding, and he had rendered additional services at their insistence, but they had failed to pay for his services.

On February 13, 2001, the parties executed a written stipulation for binding arbitration. This stipulation, which is signed by Glassman and by McNab (for himself and for Scirocco), provides: "We agree to binding arbitration in the above-referenced fee arbitration case. We understand that the award will become final and binding immediately, and that a new trial may not be requested." The stipulation also contains the following handwritten notation, accompanied by McNab's and Glassman's initials: "Notwithstanding the above it is understood jurisdiction and attorney-client relationship are still issues in this proceeding, and rulings thereon binding as provided by law."

On May 8, 2001, the Los Angeles County Bar Association's Dispute Resolution Services, Inc. (DRS), arbitrators issued their award, which contains a detailed description of the parties' contentions, the evidence presented during the arbitration, and the arbitrators' findings. In enumerating the claims of the parties, the arbitrators indicated that appellants had asserted that "no attorney-client relation was ever formed, and the DRS arbitrators therefore lack[ed] jurisdiction under the Business [and] Professions Code." (Fn. omitted.)

Regarding the issue of jurisdiction, the award states: "The parties signed a written stipulation for binding arbitration as to all issues, including jurisdiction." In a footnote, it elaborates: "Through a convoluted series of objections and maneuvers, the jurisdiction issue . . . was passed off to the State Bar, then returned to DRS and tentatively decided both ways, to the satisfaction of no one. The arbitrators agreed to treat the Petition for Arbitration as simply a choice of forum, not a submission to jurisdiction, provided that our ultimate determination of the issue will be final. Both parties so stipulated in writing."

According to the award, the following facts were substantially uncontested during the arbitration: Scirocco is in the business of borrowing funds to buy

real estate secured obligations at a discount and attempting to collect their full value for profit. The arbitration proceedings in question ultimately stemmed from a promissory note secured by real property owned by a partnership known as "320 Pine Avenue Partners." In February 1994, this partnership entered a bankruptcy proceeding, and the note went into default.

The award further states: In May 1994, TPM Holdings, Inc. (TPM), bought the note from its prior holder, and it asked Glassman, who had represented the note's prior holder, to represent TPM. TPM then sold the promissory note to Scirocco. In retaining Glassman, TPM notified Glassman of the sale, but stated that it retained responsibility for servicing and collecting on the note. Glassman appeared in the bankruptcy proceedings, represented himself as Scirocco's attorney, and engaged in negotiations intended to achieve a settlement that would permit Scirocco to foreclose, sell, or collect on the note.

The award further states: In May 1995, Scirocco sued TPM in an action, unknown to Glassman. According to the operative complaint, TPM and Scirocco were joint venturers engaged in the business of purchasing notes, with Scirocco supplying the funding and TPM providing services regarding the notes. The complaint further alleged that TPM had been taking hidden profits on the notes. Scirocco and TPM settled this action in September 1995. R. Wicks Stephens II, an attorney who represented Scirocco in its action against TPM, advised Glassman of the settlement, and told him that Scirocco would henceforth service the note. Glassman sent a letter to TPM stating that Scirocco had asked him to continue representing it, and sent a copy of this letter to Stephens. Neither McNab nor Stephens objected to Glassman's statement in this letter.

The award further states: Glassman subsequently wrote to Scirocco, asking it to confirm his representation and to pay his accumulated fees. Scirocco declined to retain Glassman, rejected his claim for fees, and independently reached a settlement in the bankruptcy proceeding. According to the arbitrators, "So far as anyone is aware, TPM is no longer extant and cannot be found."

Following a detailed assessment of the correspondence and communications between TPM, Scirocco, and Glassman, the award concludes that there was an attorney-client relationship between Scirocco and Glassman, and that Glassman was entitled to $41,483.23 in fees plus interest.

On June 14, 2001, Glassman filed a petition to confirm the award. The trial court confirmed the award on February 19, 2002. This appeal followed.

## DISCUSSION

Appellants contend that the trial court erred in confirming the award. They are mistaken.

■ To enforce the finality of arbitration, the statutes governing nonjudicial arbitration awards minimize judicial intervention. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Once a petition to confirm an award is filed, the superior court has only four courses of conduct: to confirm the award, to correct and confirm it, to vacate it, or to dismiss the petition. (*United Brotherhood of Carpenters etc., Local 642 v. DeMello* (1972) 22 Cal.App.3d 838, 840 [100 Cal.Rptr. 564]; 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 518, pp. 956–957.)

Here, appellants' central contention is that the arbitrators lacked subject matter jurisdiction over the issue concerning the existence of an attorney-client relationship. Appellants thus rely on subdivision (a)(4) of Code of Civil Procedure section 1286.2, which provides that the trial court shall vacate an award when "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

■ Under this provision, the trial court is authorized to vacate an arbitrator's determination that he or she has the jurisdiction to resolve an issue when this issue is outside the scope of an arbitration agreement, or the statutes permitting or requiring arbitration. (*National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1725 [1 Cal.Rptr.2d 570] (*Stites*). ■ We review de novo the trial court's determination that the DRS arbitrators did not exceed their authority in determining that there was an attorney-client relationship. (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994].)

Here, the focus of appellants' challenge is the statutory scheme for the arbitration of attorney-client fee disputes found in section 6200 et seq. of the Business and Professions Code.[1] In enacting section 6200 et seq., the Legislature established a system "for the arbitration . . . of disputes concerning fees, costs, or both, charged for professional services by members of the State Bar . . . ." (§ 6200, subd. (a).) Arbitration under this statutory scheme is "voluntary for a client and . . . mandatory for an attorney if commenced by a client." (§ 6200, subd. (c).)

---

[1] All further statutory references are to the Business and Professions Code, unless otherwise indicated.

Appellants' contention regarding the arbitrators' subject matter jurisdiction relies on *Stites, supra,* 235 Cal.App.3d 1718, the leading case on jurisdiction under this statutory scheme. This contention rests on two premises: (1) section 6200 et seq. does not confer jurisdiction over the threshold issue of the existence of an attorney-client relationship on the DRS arbitrators; and (2) the DRS arbitrators did not acquire jurisdiction over this issue on the basis of the parties' stipulation. As we explain below, we accept premise (1) but reject premise (2), and thus conclude that appellants' contention fails.

Premise (1) was established in *Stites.* In *Stites,* a bank director was sued following the failure of his bank, and his insurer agreed to pay his reasonable defense costs. (*Stites, supra,* 235 Cal.App.3d at p. 1722.) The bank director hired an attorney, and the action against the bank director was eventually settled. (*Ibid.*) The insurer then disputed the attorney's request for fees and initiated an arbitration under section 6200 et seq., but the attorney refused to participate in the arbitration. (*Ibid.*) The arbitrators were unable to determine the extent to which the attorney's fees were reasonably incurred, and they issued an award in the insurer's favor. (*Ibid.*) The trial court declined to confirm the award, concluding that the attorney was the bank director's *Cumis* counsel (*San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375 [208 Cal.Rptr. 494]), and thus the fee dispute was not subject to arbitration under section 6200 et seq. (*Stites, supra,* at p. 1723.)

The court in *Stites* affirmed this ruling. (*Stites, supra,* 235 Cal.App.3d at p. 1728.) Following an examination of the statutory scheme, it held that "arbitration pursuant to section 6200 et seq. is limited to fee disputes between attorneys and their clients," and that the attorney was not the insurer's client. (*Id.* at pp. 1727, 1728.)

Furthermore, the court in *Stites* concluded that the arbitrators lacked subject matter jurisdiction regarding the existence of the attorney-client relationship, and thus that any finding on this issue by the arbitrators was not binding on the trial court. (*Stites, supra,* 235 Cal.App.3d at p. 1724.) In so concluding, the *Stites* court rejected the contention that the attorney had waived his objection to the arbitrators' jurisdiction by his failure to contest this matter during the arbitration, citing the proposition that subject matter jurisdiction "cannot be conferred by consent, waiver, or estoppel." (*Ibid.*)

Appellants also contend that *Stites* establishes premise (2) of their argument, namely, that the parties could not confer jurisdiction over the issue of the existence of an attorney-client relationship upon the DRS arbitrators *by an agreement.* We disagree.

We begin by observing that *Stites* did not confront this question. The attorney in that case did not participate in the arbitration, and thus the court in *Stites* examined the limits of the arbitrators' jurisdiction, *solely* as conferred by section 6200 et seq. By contrast, the parties before us entered into a stipulation that ostensibly augmented the arbitrators' statutory jurisdiction under section 6200 et seq.

The key issue, therefore, is whether the provisions of section 6200 et seq. affirmatively preclude any such augmentation. Our inquiry into this question of statutory interpretation follows established principles. "A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.]" (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) In examining the statutory language, we must consider "the context of the entire statute . . . and the statutory scheme of which it is a part . . . . ' "Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" [Citations.]' " (*Id.* at p. 388.)

■ Nothing in section 6200 et seq. bars the parties from entering into an agreement that authorizes the arbitrators to determine the existence of an attorney-client relationship. This statutory scheme mandates the creation of a system for arbitration limited to attorney fee disputes (§§ 6200, 6203, subd. (a)), establishes notice requirements (§ 6201), regulates the disclosure of attorney-client communications (§ 6202), and provides for binding arbitration upon agreement of the parties (§ 6204, subd (a)). Subdivision (a) of section 6203, which concerns the form of the arbitration award, states: "The award shall . . . include a determination of *all the questions submitted to the arbitrators*, the decision of which is *necessary* in order to determine the controversy." (Italics added.)

■ Furthermore, subdivision (b) of section 6203 states that in appropriate circumstances, the award may be confirmed, corrected, or vacated under Code of Civil Procedure section 1285 et seq., indicating that the statutory scheme at issue must be viewed in the context of the general provisions governing arbitration in the Code of Civil Procedure. As our Supreme Court remarked in *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332 342 [79 Cal.Rptr.2d 308, 965 P.2d 1178], section 1281 of the Code of Civil Procedure "states that, generally, a 'written agreement to submit' a dispute 'to arbitration . . . is valid, enforceable and irrevocable . . . .' "

■ We therefore conclude that section 6200 et seq. permits the parties to agree that the arbitrators may decide the existence of an attorney-client

relationship. Appellants nonetheless argue otherwise, pointing to the proposition cited in *Stites* that subject matter jurisdiction generally "cannot be conferred by consent, waiver, or estoppel." (*Stites, supra,* 235 Cal.App.3d at p. 1724.)

In our view, appellants misapprehend the import of this proposition, which traces its origins to case law concerning the subject matter jurisdiction of courts of law. (2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 12, pp. 556–558.) The subject matter jurisdiction of these tribunals is limited by statutory and constitutional law (*id.,* § 6, p. 551), and thus parties before these tribunals cannot generally augment this jurisdiction through their own conduct (see *id.,* § 12, p. 556). By contrast, as we have explained, the general statutory provisions governing arbitration permit parties to confer subject matter jurisdiction on arbitrators over an issue by agreement. The court in *Stites* invoked the proposition in question solely to reject a contention that subject matter jurisdiction under section 6200 et seq. might be effectively augmented through *waiver,* and thus it did not address augmentation through agreement.[2]

Appellants also contend that premise (2) can be established on another ground. They argue that the arbitrators *themselves* determined that they were *not* authorized under the arbitration stipulation to decide whether there was an attorney-client relationship. On this matter, appellants cite the footnote regarding this stipulation in the award, which states in part that "[t]he arbitrators agreed to treat the Petition for Arbitration as simply a choice of forum, not a submission to jurisdiction . . . ."

This contention is meritless. As appellants acknowledge, "[o]n issues concerning whether the arbitrator exceeded his powers," reviewing courts "must give substantial deference to the arbitrator's own assessment of his contractual authority." (*Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1087 [106 Cal.Rptr.2d 431].) Here, the sentence quoted by appellants, rendered in full and set in context, is as follows: "Through a convoluted series of objections and maneuvers, the jurisdiction issue . . . was passed off to the State Bar, then returned to DRS and tentatively decided both ways, to the satisfaction of no one. The arbitrators agreed to treat the Petition for Arbitration as simply a choice of forum, not a submission to jurisdiction, *provided that our ultimate determination of the issue will be final.* Both parties *so*

---

[2] As additional support for the contention that the DRS arbitrators lacked authority to determine the existence of an attorney-client relationship, appellants quote excerpts of DRS rules in their brief. These rules, as quoted, limit DRS arbitrations to fee disputes between clients and attorneys. However, the rules in question are not properly before us because they are not found in the record, and appellants have not supplied us with the basis for taking judicial notice of them. (Evid. Code, §§ 452, 453.) In any event, the rules, as quoted, do not expressly bar parties to a DRS arbitration from stipulating that the arbitrators may determine the threshold issue regarding the existence of the attorney-client relationship.

*stipulated in writing.*" (Italics added.) Furthermore, the arbitration award states: "The parties signed a written stipulation for binding arbitration as to *all issues, including jurisdiction.*" (Italics added.)

The arbitrators thus understood the stipulation to mean that the parties had not agreed that there was an attorney-client relationship for the purposes of section 6200 et seq., and that they had chosen the arbitration as the forum in which this threshold issue would be determined with finality. This understanding is supported by the record, which indicates that appellants vigorously argued before the arbitrators that no attorney-client relationship existed. We therefore defer to the arbitrators on this matter.

Finally, appellants contend that the arbitrators made legal and factual errors in determining that there was an attorney-client relationship between Glassman and Scirocco, and thus they lacked jurisdiction under section 6200 et seq. to assess a fee award. Again, this contention fails. As we have explained, the stipulation empowered the arbitrators to make the threshold determination about the attorney-client relationship, and thus appellants' contention amounts to a direct attack on findings within the arbitrators' authority. Such findings are beyond the scope of our review. (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 28 [arbitrators do not exceed their powers in assigning an erroneous reason for their decision].)[3]

In sum, the trial court correctly confirmed the arbitration award.[4]

---

[3] McNab's belatedly filed reply brief raises some meritless contentions that we briefly address. First, he contends that the arbitrators found (or should have found) that Glassman's client was *the joint venture* involving TPM and Scirocco, and thus neither Scirocco, as joint venturer, nor McNab, as Scirocco's general partner, was Glassman's client under any such finding. However, the arbitrators' award expressly determined that Scirocco was Glassman's client. For the reasons cited in the text, we decline to examine this finding.

Second, McNab suggests that the arbitrators lacked jurisdiction to impose liability on him for Glassman's attorney fees because they did not find that he was Glassman's client. We disagree. The arbitrators identified McNab as Scirocco's general partner, and as such, he was liable for Scirocco's debts (*City of San Diego v. DeLeeuw* (1993) 12 Cal.App.4th 10, 13 [15 Cal.Rptr.2d 98]). In view of the parties' stipulation, the arbitrators reasonably concluded that they were authorized to resolve "all issues" involving the parties, including McNab's liability, arising out of the fee dispute between Glassman and his client, Scirocco.

Third, McNab contends for the first time that the statutory scheme for the arbitration of attorney-client fee disputes in section 6200 et seq. is constitutionally infirm. Following established appellate principles, we decline to address this and all other contentions not presented in his opening brief. (*In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 278 [268 Cal.Rptr. 83].)

[4] Glassman requests sanctions on the ground the appeal is frivolous. Upon review, we conclude that this appeal does not meet the demanding standards under *Flaherty* for imposition of sanctions, and deny the request. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)

## DISPOSITION

The order is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied November 25, 2003, and appellants' petition for review by the Supreme Court was denied February 18, 2004.