Filed 11/26/24  Wall v. Quiver Distribution CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEREMY WALL, | B334791 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STCP04153) |
| v. | |
| QUIVER DISTRIBUTION, LTD., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Timothy Patrick Dillon, Judge.  Affirmed.

Law Office of Jennifer Hughes and Jennifer Hughes for Plaintiff and Respondent.

Thakur Law Firm and Pamela Tahim Thakur for Defendant and Appellant.

———————————————

Defendant and appellant Quiver Distribution, Limited (Quiver) appeals from a trial court judgment confirming an arbitration award in favor of plaintiff and respondent Jeremy Wall.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Jeremy Wall is a film producer.  In 2021, Wall agreed to produce a film with Carolyn McMaster, a Canadian film producer.  Wall entered a co-production agreement with McMaster "and any company that [McMaster] is an officer or an equity holder [of] associated with the Picture . . . ."[1]  The agreement included a provision requiring the parties to resolve disputes arising under the agreement by arbitration in Canada under the Rules of International Arbitration of the Independent Film and Television Alliance (IFTA).

Subsequently, a dispute arose in connection with the production of the film.  Wall, individually and on behalf of suspended California company Polaris Pictures, LLC, entered into a settlement agreement to resolve the dispute with McMaster, in her individual capacity, and on behalf of Alberta and distributors, Quiver, a Canadian company, and Myriad Pictures Inc. (Myriad), a California company.[2]

The settlement agreement required Quiver, Myriad, and Alberta to compensate Wall and provide him with producer

---

[1]     The only company identified in this agreement is 2326352 Alberta, Ltd. (Alberta), a Canadian company McMaster formed for the project.  A separate letter indicated Alberta would produce the film and license the distribution rights to Quiver.

[2]     DFAD, LLC, a New Mexico limited liability company Wall created for the project, was also a party to the settlement agreement.  Only Wall and Quiver are parties to this appeal.

2

credits in exchange for his withdrawal as an active producer on the film. One term of the agreement, referred to in this appeal as the "Financing Condition," provided: "Closing of financing for the production costs of the Film with Banc of California on or before August 15, 2021 (the 'Closing') shall be a condition of this Agreement and in the event such financing and closing does not occur, this Agreement shall be null and void[.]"

The Settlement Agreement also included a clause titled "Choice of Law[:] Arbitration," which provided in relevant part: "The Parties hereby agree that the laws of Los Angeles, California shall govern the terms, conditions, performance and interpretation of the Agreement. The Parties agree that any dispute under this agreement will be resolved by binding, final, exclusive and non-appealable arbitration under the Rules of the International Arbitration of the Independent Film and Television Alliance ('IFTA') in effect as of the date the request for arbitration is filed (the 'Rules'). The arbitration shall be held in Los Angeles, California virtually or physically with a single arbitrator. . . . The Parties hereto agree that they will abide by and perform any award rendered in any arbitration conducted under said rules and that any court having jurisdiction thereof may issue a judgment based upon such award."

*Arbitration*

In October 2021, Wall filed the operative Notice of Arbitration with IFTA against McMaster, Alberta, Quiver, and Myriad (collectively, McMaster parties) for breach of contract and declaratory relief. Quiver filed a counterclaim for repudiatory breach.

In February 2022, the McMaster parties moved to dismiss the arbitration, arguing that because the Financing Condition

3

had not been met, the entire settlement agreement was null and void, including the arbitration provision, and the IFTA arbitrator in Los Angeles had no jurisdiction over the dispute. The arbitrator denied the motions after finding clear and convincing evidence that, although financing had not been obtained, the parties had waived the Financing Condition as a condition precedent to the settlement agreement's other terms.

Subsequently, over five days in May and June 2022, the parties participated in an arbitration of the merits of Wall's claims. In August 2022, the arbitrator issued an interim arbitration award to Wall. Among other things, the interim award reaffirmed the arbitrator's prior ruling that the parties waived the Financing Condition and the settlement agreement remained in effect, governed the parties' dispute, and "establishe[d] the jurisdiction of IFTA Arbitration in California over the proceedings under the Settlement Agreement."

In November 2022, the arbitrator issued a corrected final award in Wall's favor, awarding Wall $162,500 in fees owed under the settlement agreement and $228,073.60 in attorney fees and costs, and requiring the McMaster parties to accord Wall producer credit, invite him to premiers and festivals, attach him to remakes, sequels, and prequels, and pay him a stated share of net proceeds.

### Trial court proceedings

In November 2022, Quiver filed a petition in the superior court, seeking to vacate the arbitration award and naming Wall as a respondent. In April 2023, Quiver filed an amended petition, adding Alberta and Myriad as respondents.

In an attachment to the petition, Quiver stated that in its arbitration pleadings, it had "sought a preliminary determination

4

as to the jurisdiction of [the] IFTA under Canadian law as set forth in the co[-]production agreement, versus allowing an IFTA Arbitration to proceed in Los Angeles under California law based on a signed Settlement Agreement . . . ." Quiver stated that "while objecting to the jurisdiction of IFTA to conduct this arbitration in Los Angeles pursuant to the Settlement Agreement," Quiver "agree[d] to submit to the jurisdiction of IFTA in Los Angeles for the limited purpose of determining its own jurisdiction." Quiver argued the arbitrator's ruling that the Financing Condition was waived was "wrong at law" and the arbitrator exceeded her authority "by unilaterally determining that the Parties waived a fully negotiated unmet condition." It contended the dispute should be determined by "an IFTA arbitration in Alberta under the terms of the co-production agreement."

Wall opposed the petition, relying on the general legal principle favoring the finality of arbitration awards, and arguing that Quiver advanced no valid basis for the court to vacate the award. In January 2023, Wall filed a competing petition to confirm the arbitration award. Quiver opposed the petition, arguing that the evidence did not support the arbitrator's finding of waiver.

In September 2023, the trial court denied Quiver's petition to vacate the award and granted Wall's petition to confirm. The court found that Code of Civil Procedure section 1297.161 and IFTA Rule 8.3 allowed the arbitrator to rule on her own jurisdiction, including by ruling on "the existence or validity" of the parties' agreement to arbitrate.[3] It concluded Quiver failed to

---

[3] All further undesignated statutory references are to the Code of Civil Procedure.

5

explain how the arbitrator's decision was wrong at law or
" 'unilaterally determined' " by the arbitrator, when both parties
presented evidence at hearings before the decision was issued.
The court determined it had no power to review the merits of the
arbitrator's determination that the Financing Condition was
waived.  Finally, the court rejected Quiver's contention that the
arbitrator's exercise of jurisdiction violated public policy because
Quiver failed to "cite to an explicit legislative expression of public
policy that was allegedly violated by the Award, such as illegality
in the arbitration contract."

The court entered judgment confirming the arbitration
award.  Quiver timely appealed.

## DISCUSSION

### I. Applicable Legal Principles and Standard of Review

The parties agree that California law governs the dispute.
" 'The California Arbitration Act (CAA; [Code Civ. Proc.,] § 1280
et seq.) "represents a comprehensive statutory scheme regulating
private arbitration in this state." ' [Citations.]  Under the
California Arbitration Act, '[t]he scope of judicial review of
arbitration awards is extremely narrow because of the strong
public policy in favor of arbitration and according finality to
arbitration awards.  [Citations.]  An arbitrator's decision
generally is not reviewable for errors of fact or law.'  [Citations.]
This is true even when the 'error appears on the face of the award
and causes substantial injustice to the parties.'  [Citation.]"
(*Branches Neighborhood Corp. v. CalAtlantic Group, Inc.* (2018)
26 Cal.App.5th 743, 750; see also *Moncharsh v. Heily & Blase*
(1992) 3 Cal.4th 1, 27–28 (*Moncharsh*).)

"The only grounds for judicially vacating an arbitration
award are set by statute."  (*Malek Media Group LLC v. AXQG*

6

*Corp.* (2020) 58 Cal.App.5th 817, 827.) As relevant here, section 1286.2, subdivision (a)(4) allows courts to "vacate the [arbitration] award if the court determines . . . [¶] . . . [¶] [t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

"In determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority." (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443–444; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro Devices*) [" 'de novo' " standard applies to review of trial court's order vacating award rather than review of arbitrator's award].)

## II. The Trial Court Properly Denied Quiver's Motion to Vacate the Arbitration Award

On appeal, Quiver argues that by determining the parties waived the Financing Condition, the arbitrator exceeded her powers by "act[ing] without jurisdiction" and "decid[ing] issues which were not submitted to arbitration." We reject both arguments.

### A. Quiver has failed to establish the arbitrator acted "without jurisdiction"

Quiver contends the arbitrator did not have the "jurisdiction" to arbitrate the parties' dispute. Quiver specifies that it is referring to "[s]ubject matter jurisdiction," which it defines as "an arbitrator's authority or power to adjudicate a certain type of dispute."

7

An arbitrator's "subject matter jurisdiction" over a dispute is synonymous with the "arbitrability" of a dispute. (*Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 747, citing *National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1723–1725 (*National Union*).) Arbitrability asks whether the parties agreed to arbitrate a dispute, including whether parties are bound by an arbitration clause or whether their dispute is within the scope of the clause. (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 765.)

Quiver asserts an IFTA arbitrator in Los Angeles had no jurisdiction to adjudicate the parties' dispute because the arbitration provision was a clause in the parties' settlement agreement, and the entire settlement agreement was null and void. Yet, "[i]t has long been settled that when parties have agreed to arbitration, challenges to the validity of the underlying contract, including contract defenses such as fraud in the inducement or illegality, are for the arbitrator to decide. [Citations.] This is because the arbitration clause is viewed as separate from the underlying contract. [Citation.] Thus, allegations that the main contract is unlawful or unconscionable does not affect the enforceability of the arbitration clause." (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1107–1108; *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323.)

Further, even when a party more specifically claims that the arbitration clause is invalid, the dispute over arbitrability requires resolution of a preliminary question: "[*W*]*ho* . . . determines *what* issues were arbitrable—the arbitrator or a

8

judge. In other words, does the arbitrator or the court decide the question of arbitrability?" (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1439 (*Greenspan*).) If, by virtue of the parties' agreement, statute, or rule, the *arbitrator* is empowered to decide the threshold question of arbitrability, then that decision, like most other aspects of an arbitration award, is not subject to judicial review for errors of law. "[W]here the question of arbitrability is decided by the arbitrator, we are not at liberty to substitute our own view in place of the arbitrator's regardless what our view might be of the correctness of the arbitral decision. [Citation.] The parties have delegated that decision to the arbitrator and we may not 'second-guess' [her]." (*George Day Const. Co., Inc. v. United Brotherhood of Carpenters and Joiners of America, Local 354* (9th Cir. 1984) 722 F.2d 1471, 1476–1477.)

The question of whether the arbitrator is authorized to decide its own jurisdiction is frequently described as one of delegation. For example, in *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1557 (*Malone*), the parties' agreement included the delegation clause: " 'The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement.' [Fn. omitted.]" A second delegation clause was incorporated into the agreement by reference to the rules of the American Arbitration Association, which provided that " '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.' " (*Ibid.*, fn. 3.)

When one party—the employer—moved to compel arbitration of the employee's wage and hour action, the employee argued the arbitration agreement was unconscionable and

9

therefore unenforceable.  (*Malone*, *supra*, 226 Cal.App.4th at p. 1557.)  The trial court enforced the delegation clause and compelled arbitration.  The appellate court affirmed, explaining: "A delegation clause requires issues of interpretation and enforceability of an arbitration agreement to be resolved by the arbitrator.  Delegation clauses have the potential to create problems of circularity.  For example, suppose an arbitration agreement delegates the issue of enforceability to the arbitrator.  If the arbitrator concludes that the arbitration agreement is, in fact, not enforceable, this would mean that the entire agreement, *including the delegation clause*, is unenforceable—a finding that would undermine the arbitrator's jurisdiction to make that finding in the first place." (*Id*. at p. 1559.)

"For this reason, courts have treated the delegation clause as a separate agreement to arbitrate solely the issues of enforceability.  In other words, courts have *separately* enforced an enforceable delegation clause; thus, it has been held that whether the arbitration agreement as a whole is ultimately held to be unenforceable will have no bearing on the enforcement of the delegation clause itself.  [Citation.]  [¶]  For this reason, when a party is claiming that an arbitration agreement is unenforceable, it is important to determine whether the party is making a specific challenge to the enforceability of the delegation clause or is simply arguing that the agreement as a whole is unenforceable.  If the party's challenge is directed to the agreement as a whole— even if it applies equally to the delegation clause—the delegation clause is severed out and enforced; thus, the arbitrator, not the court, will determine whether the agreement is enforceable.  In contrast, if the party is making a specific challenge to the delegation clause, the court must determine whether the

delegation clause itself may be enforced (and can only delegate the general issue of enforceability to the arbitrator if it first determines the delegation clause is enforceable)." (*Malone*, *supra*, 226 Cal.App.4th at pp. 1559–1560, citing *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 70.)

As noted above, courts have long treated an arbitration clause as separate from the underlying contract. In this case, that principle would mean Quiver's argument that the failure of the Financing Condition rendered the underlying settlement agreement unenforceable would not affect the enforceability of the arbitration clause. However, even assuming Quiver's argument was specific to the validity of the arbitration clause alone, here, as in *Malone*, the parties incorporated arbitration rules that specified the arbitrator would decide disputes over the validity of the parties' agreement to arbitrate.

IFTA Rule 8.3 provides that an arbitrator "shall rule on his/her own jurisdiction, including ruling on any objections with respect to the existence or validity of the agreement of the parties to arbitrate; for that purpose, an arbitration provision which forms part of an agreement or alleged agreement of the parties shall be treated as an agreement independent of the other terms of such agreement, so that a decision by the Arbitrator that such agreement is null and void shall not entail the invalidity of such arbitration provision." Further, this was an "international commercial arbitration" within the meaning of section 1297.11. Section 1297.161 provides that in an international commercial arbitration, an arbitrator "may rule on its own jurisdiction," and otherwise duplicates the language in IFTA Rule 8.3.

Quiver's argument regarding the Financing Condition is an attack on the settlement agreement as a whole, not the

11

delegation clause specifically. Thus, as explained in *Malone*, it was for the arbitrator to determine whether the agreement to arbitrate before IFTA in Los Angeles was enforceable. Moreover, Quiver does not dispute that it "agree[d] to submit to the jurisdiction" of the Los Angeles IFTA arbitrator "for the limited purpose of determining its own jurisdiction."[4] Without judicial intervention, and in accordance with IFTA Rule 8.3 and section 1297.161, the parties of their own accord essentially "severed" and agreed to enforcement of the incorporated delegation provision by submitting the threshold jurisdictional question of the enforceability of the settlement agreement to the arbitrator in Los Angeles. Having done so, the arbitrator's task was to determine all other questions regarding the validity of the rest of the agreement.

Because the arbitrator had the authority to determine the enforceability of the parties' arbitration agreement, there was no basis for the trial court to vacate the arbitration award on the ground that the arbitrator's determination of enforceability was legally or factually incorrect. On appeal, Quiver repeatedly contends the arbitrator made "an *erroneous* determination that she had jurisdiction" to arbitrate, and she "exceeded her powers as a result of her *erroneous* determination of jurisdiction." But, since the question of arbitrability was to be decided by the arbitrator, we may not second-guess that decision.

*Glassman v. McNab* (2003) 112 Cal.App.4th 1593 (*Glassman*), is instructive. *Glassman* concerned a binding

---

[4]     Consistent with the parties' agreement that the arbitrator in Los Angeles could decide "its own jurisdiction," we note that Quiver did not refuse to arbitrate in Los Angeles, which would have forced Wall to file a petition to compel arbitration.

12

attorney fee arbitration. After the attorney requested payment for his services, the appellants filed a petition for fee arbitration pursuant to Business and Professions Code section 6200. (*Id*. at pp. 1595–1596.) The parties signed a written stipulation for binding arbitration as to all issues, including jurisdiction. However, the appellants maintained there was no attorney-client relationship between themselves and the attorney, and, as a result, the arbitrators had no jurisdiction under the Business and Professions Code. (*Ibid*.) The arbitrators issued an award in the attorney's favor, which the trial court subsequently confirmed. The appellants challenged the order confirming the award, arguing the arbitrators "lacked subject matter jurisdiction over the issue concerning the existence of an attorney-client relationship." (*Id*. at p. 1598.)

The reviewing court rejected the appellants' argument that the arbitrators' award should be vacated under section 1286.2, subdivision (a)(4), as an act in excess of the arbitrators' powers. The court concluded Business and Professions Code section 6200 permitted the parties to agree that the arbitrators would decide the existence of an attorney-client relationship. The parties had entered such an agreement, stipulating that "they had chosen the arbitration as the forum in which this threshold issue would be determined with finality." (*Glassman*, *supra*, 112 Cal.App.4th at p. 1602.) The parties' stipulation "augmented" the arbitrators' jurisdiction under the statute. (*Id*. at p. 1600.) As such, the court rejected the appellants' further arguments regarding the merits of the arbitrators' determination of the existence of an attorney-client relationship—the basis for jurisdiction.

The court explained: "[A]ppellants contend that the arbitrators made legal and factual errors in determining that

13

there was an attorney-client relationship . . . and thus they lacked jurisdiction under [Business and Professions Code] section 6200 et seq. to assess a fee award. Again, this contention fails. As we have explained, the stipulation empowered the arbitrators to make the threshold determination about the attorney-client relationship, and thus appellants' contention amounts to a direct attack on findings within the arbitrators' authority. Such findings are beyond the scope of our review." (*Glassman*, *supra*, 112 Cal.App.4th at p. 1602, citing *Moncharsh*, *supra*, 3 Cal.4th at p. 28.)

Quiver appears to attempt to distinguish *Glassman* on the ground that the parties in that case executed a stipulation. We disagree that the distinction is meaningful here. As discussed above, IFTA Rule 8.3, incorporated by reference into the parties' agreement, allowed the arbitrator to rule on her own jurisdiction, as did section 1297.161. Further, Quiver's own briefing in the trial court indicated that it consented to submit to the arbitrator in Los Angeles the question of whether the settlement agreement remained in effect. Quiver does not dispute this fact or argue that its consent did not confer jurisdiction on the arbitrator to decide the question.[5] Rather, Quiver directly attacks the legal merits of the arbitrator's findings that it made within the jurisdiction conferred by the parties. "Such findings are beyond the scope of our review." (*Glassman*, *supra*, 112 Cal.App.4th at p. 1602.)

Quiver is precluded from now contending the arbitrator lacked jurisdiction to decide the very question the parties agreed to submit to her. (*University of San Francisco Faculty Assn. v.*

---

[5] These factors distinguish this case from *National Union*, *supra*, 235 Cal.App.3d 1718.

14

*University of San Francisco* (1983) 142 Cal.App.3d 942, 954 ["Since the parties stipulated that the arbitrator would have the right to decide what his jurisdiction was the University cannot now contend that the arbitrator lacked jurisdiction to decide the issue"]; *O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110.)  The arbitrator's decision regarding the validity of the Settlement Agreement "is final and conclusive *because the parties have agreed that it be so.*"  (*Moncharsh*, *supra*, 3 Cal.4th at p. 10.)

Citing *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576 (*Pacific Gas*), Quiver also contends the arbitrator's determination that the parties waived the Financing Condition is subject to judicial review because it was an "egregious" mistake of law that amounted to an arbitrary remaking of the settlement agreement.  We disagree.

In *Pacific Gas*, the court suggested that "where the award rests on a construction of a written contract under a provision for arbitration of *future* disputes, a party should be afforded a limited judicial review of a claim that the arbitrators arbitrarily remade the contract.  This view finds support in the recurrent intimations in the case law that 'completely irrational' legal conclusions afford a basis for vacating an award." (*Pacific Gas*, *supra*, 15 Cal.App.4th at p. 592.)  As an initial matter, we note that courts have called into question the " 'completely irrational' " standard *Pacific Gas* espoused, in light of *Moncharsh*'s holding that courts may not review an arbitration award based on a claimed error of law.  (*Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 435, 434; see also *Advanced Micro Devices*, *supra*, 9 Cal.4th at pp. 376–377 & fn. 10 [an arbitration award cannot be reviewed for legal error, citing *Hall*].)

However, even assuming the *Pacific Gas* court's reasoning regarding the arbitrary remaking of a contract remains valid, we would not find it persuasive here. The *Pacific Gas* court reasoned that "[t]he principal justification for restricting judicial review of an arbitration award is the consent of the parties. Regardless how egregious the error of law, if the complaining party could anticipate the error when consenting to arbitration there is no basis for complaint." (*Pacific Gas*, *supra*, 15 Cal.App.4th at p. 591.) We cannot ignore that in this case, the parties agreed to the arbitration provision as part of the resolution of a dispute; further, when the instant, further dispute arose, Quiver agreed to submit the jurisdictional question—the current validity of the settlement agreement—to the IFTA arbitrator in Los Angeles.

As the *Pacific Gas* court reasoned, having consented to arbitrate the issue of whether the settlement agreement governed the parties' relationship, Quiver cannot now complain regarding the outcome and obtain judicial review. " '[A] claimant may not voluntarily submit his claim to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrator to act.' [Citations.]" (*Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 389.)

In its reply on appeal, Quiver argues that neither IFTA Rule 8.3 nor section 1297.161 preclude judicial review of its challenge to the arbitrator's determination of its own jurisdiction. Citing *Greenspan*, *supra*, 185 Cal.App.4th at page 1443, Quiver contends the court should review the arbitrator's jurisdictional determination under section 1286.2 to determine if it was " 'wholly groundless.' " Quiver forfeited this argument by failing to raise it in its opening brief. But even if Quiver had timely raised the issue, the argument fails on its merits.

16

The *Greenspan* court relied on several federal court decisions and the California Supreme Court's holding that "[t]he arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract. In this situation the court should stay proceedings pending the arbiter's determination of his own jurisdiction unless it is clear that the claim of arbitrability is wholly groundless." (*McCarroll v. Los Angeles County District Council of Carpenters* (1957) 49 Cal.2d 45, 65.) In this case, the trial court was not presented with the situation contemplated in *McCarroll*, one in which the trial court has been asked to decide arbitrability and must consider whether *trial court* proceedings must be stayed unless the party seeking arbitration has made "wholly groundless" claims that the matter is subject to arbitration. The "wholly groundless" test relates to the trial court's necessary evaluation of whether it must decide arbitrability questions, or stay the proceedings for the arbitrator to decide arbitrability. Here, that evaluation was unnecessary because Quiver willingly submitted the question to the Los Angeles IFTA arbitrator.

Further, as explained in *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 557, "where the Contract provides for arbitration in conformance with rules that specify the arbitrator will decide the scope of his or her own jurisdiction, the parties' intent is clear and unmistakable, even without a recital in the contract that the arbitrator will decide any dispute over arbitrability." And when the parties' intent is clear and unmistakable that the arbitrator is to decide the scope of his or her own jurisdiction, that intent controls. (*Id.* at p. 553 [" 'Unless the parties *clearly and unmistakably provide otherwise*, the question of whether the parties agreed to arbitrate is to be

decided by the court, not the arbitrator' " (italics added)].) The "wholly groundless" test does not authorize the trial court to retrospectively engage in judicial review of the arbitrator's decision on arbitrability for legal or factual error. (*Greenspan*, *supra*, 185 Cal.App.4th at pp. 1444–1445 [arbitrator's arbitrability finding not wholly groundless where contract, JAMS Rule 11, and parties' submissions permitted arbitrator to decide dispute].)

## B. The arbitrator did not exceed her powers by considering a matter not submitted to arbitration

Finally, Quiver contends that by concluding the Financing Condition was waived, the arbitrator exceeded her powers by deciding an " 'extraneous matter' " not submitted to arbitration. As we understand its argument, Quiver asserts that in evaluating whether the settlement agreement remained enforceable despite the failure of the Financing Condition, the arbitrator decided a dispute that did not arise under the settlement agreement.

Quiver acknowledges that this "extraneous matter" argument is essentially the same as its argument that the arbitrator lacked jurisdiction, and we reject it for the reasons we rejected the lack of jurisdiction argument. (*Glassman*, *supra*, 112 Cal.App.4th at p. 1602 [deferring to arbitrator's finding of arbitrability once jurisdiction over issue was established].) The threshold jurisdictional issue in this case was the enforceability and validity of the settlement agreement. Quiver informed the trial court that it agreed to submit that question to the arbitrator, and this was consistent with the parties' agreement incorporating the IFTA rules and section 1297.161. Quiver has

not established that the parties limited that threshold issue in any way to prohibit the arbitrator from considering routine concepts of contract law such as waiver of a condition precedent when determining whether the settlement agreement remained in effect. (*E-Commerce Lighting, Inc. v. E-Commerce Trade LLC* (2022) 86 Cal.App.5th 58, 65.)

*Delta Lines v. International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960 (*Delta Lines*), which Quiver cites, is readily distinguishable. There, the parties submitted a single question to the arbitrator: whether the employer had just cause to discharge one of its employees. Rather than deciding that question, the arbitrator found the company was estopped from raising the issue of just cause, due to the actions of the company's management which resulted in an invasion of the employee's privacy. By finding the company "estopped" from raising just cause because of an invasion of privacy, the arbitrator had decided "an extraneous matter having nothing whatever to do with the single question submitted to him for decision . . . ." (*Id.* at p. 967.)

*Delta Lines* is inapposite. Unlike the invasion of privacy issue in *Delta Lines*, the arbitrator's finding of waiver did not prevent the arbitrator from reaching the issues submitted to arbitration. The opposite is true: the arbitrator *had* to decide whether the failure of the Financing Condition voided the settlement agreement or was legally excused to reach the underlying dispute submitted to arbitration. Quiver conceded this point by asking the arbitrator for a "preliminary determination" of this question before proceeding to the merits of the underlying dispute. Thus, Quiver's argument that the

19

arbitrator's assessment of the Financing Condition was
" 'extraneous' " to the arbitration is unavailing.

**DISPOSITION**

The judgment is affirmed.  Respondent to recover his costs
on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL
REPORTS**


ADAMS, J.


We concur:



EDMON, P. J.



HANASONO, J.*

---

*      Judge of the Los Angeles Superior Court, assigned by the
Chief Justice pursuant to article VI, section 6 of the California
Constitution.